IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANNE F. DANAHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08CV-2293 JAR/DJW |
| ) | |
| WILD OATS MARKETS, INC., ) | |
| UNITED NATURAL FOODS, INC., ) | |
| WALLY'S NATURAL PRODUCTS, INC.,) | |
| and KAREN S. KENNEY, ) | |
| ) | |
| Defendants. ) | |

## MOTION TO LIMIT THE TESTIMONY
## OF DR. RICHARD J. WIET

COMES NOW defendant/cross-claimant, Wild Oats Markets, Inc. ("Wild Oats"), by and through its attorneys of record, Law Offices of Joseph D. Ryan, P.C. and Manz Swanson & Mulhern, P.C., and moves this court to preclude certain testimony of Dr. Richard Wiet, an expert witness retained by the plaintiff, Anne Danaher.

## INTRODUCTION

The plaintiff, Anne Danaher, allegedly purchased an ear candle from Wild Oats in 2003. An ear candle is a hollow, cylindrical-shaped piece of wax-coated linen, that is placed in a person's ear to create a warm, soothing sensation. After holding onto the candle for three years, the plaintiff enlisted the assistance of defendant, Karen Kenny, to perform the ear candling procedure. During the process of using the candle, the plaintiff's ear drum was burned by melting wax dripping into her ear canal.

The plaintiff filed this lawsuit against Ms. Kenny for the alleged negligence in performing the procedure and against Wild Oats under a theory of products liability. Wild Oats, in turn, filed an action for indemnity against United Natural Foods, Inc.

("United Natural"), the "upstream" distributor of the product, and Wally's Natural Products, Inc. ("Wally's"), the manufacturer of the candle.

On February 4, 2009, the plaintiff filed an Expert Identification, designating Dr. Richard Wiet as an expert witness to render medical and product liability opinions. (A copy of the plaintiff's Expert Identification, including the curriculum vitae of Dr. Wiet, is attached as Exhibit 1.) Dr. Wiet is an Otolaryngologist, commonly referred to as a nose, ear, and throat doctor. The first nine paragraphs of Dr. Wiet's twelve paragraph report relate to the medical aspects of the case, including the injuries sustained by the plaintiff, plaintiff's treatment and cost of treatment, and the plaintiff's prognosis. Wild Oats does not, for the purposes of this motion, contest the ability of Dr. Wiet to offer such opinions.

However, Dr. Wiet's opinions go beyond the medical issues involved in this case. The last three paragraphs, Nos. 10, 11, and 12, of Dr. Wiet's report contain opinions directed to the issue of whether the ear candle was defective and unreasonably dangerous. A review of the report, Dr. Wiet's curriculum vitae, and the recent deposition testimony of Dr. Wiet, completed on July 28, 2010, establish without a doubt that Dr. Wiet should be barred from rendering such opinions. (A copy of Dr. Wiet's deposition transcript is attached as Exhibit 2.)

## Standards for Admitting Expert Testimony

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is

the product of reliable principles and methods, and (3) the witness has applied the principles and methods to the facts of the case.

Pursuant to the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993), district courts are charged with performing a "gatekeeping" function to determine the admissibility of expert scientific testimony.  First, the court must determine that the witness is qualified by knowledge, skill, experience, training or education to render the opinions; and second, the court must determine whether the witness' opinions are reliable.  Ralston v. Smith and Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001), citing, Daubert, 509 U.S. 579, 113 S.Ct. 2786.  To be reliable under Daubert, an expert's scientific testimony must be based upon scientific knowledge, which implies a grounding in the methods and procedures of science based on actual knowledge, not subjective belief or unsupported speculation.  Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (C.A.10, 2003), citing, Daubert, 509 U.S. at 590, 113 S.Ct. 2786.

To assist in the assessment of reliability, the Daubert court listed four non-exclusive factors that the trial court may consider:  (1) whether the opinion at issue is susceptible to testing and has been subjected to testing; (2) whether the opinion has been subjected to peer review and publication; (3) whether there is a known or potential rate of error associated with the methodology used; and (4) whether the theory has been accepted in the scientific community.  509 U.S. at 593-94, 113 S.Ct. 2786. Although an expert may also testify based upon personal knowledge or evidence, the Supreme Court held in Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 150, 119 S.Ct. 1167 (1999), that the purpose of the Daubert inquiry still remains the same: to employ in the courtroom the same level of intellectual rigor that characterizes the

3

practice of an expert in the relevant field. <u>Hollander v. Sandoz Pharmaceutical Corp.</u>, 289 F.3d 1193, 1205 (10th Cir. 2002).

## **Facts**

A.  <u>Dr. Wiet's Expert Identification/Report</u>

With regard to the product liability issues in this case, Dr. Wiet opines in Paragraphs Nos. 10, 11, and 12 of his report that:

> 10. Ear candles and the practice of ear candling are of no use or benefit in the treatment of any condition or illness involving the human ear.
>
> 11. Ear candles are unreasonably dangerous products because of the potential for damage to the structure of the middle ear associated with their use.
>
> 12. Ear candles are not reasonably safe for the use apparently intended by the manufacturers and sellers of such products because of the potential damage to the structures of the middle ear associated with their use.

Attached to the Expert Identification is the curriculum vitae of Dr. Wiet. The curriculum vitae discloses that Dr. Wiet has practiced otolaryngology for thirty years and he has authored over 100 papers, articles, books and studies. However, none of these treatises address ear candles or the practice of ear candling. Instead, they involve solely the field or practice of otolaryngology. The lack of Dr. Wiet's qualifications to render opinions on the issue of the ear candle and the unreliability of his opinions was further brought out and established through Dr. Wiet's admissions at his deposition.

B.  <u>Dr. Wiet's Lack of Training, Education and Experience with Ear Candles</u>

> 1. Dr. Wiet has never given prior deposition testimony or been retained or qualified as an expert in litigation to render opinions concerning ear candles or products comparable to ear candles. (Exhibit 2, p. 28, lines 17-24; p. 29, lines 5-8, 9-13.)[1]

---

[1] Unless otherwise indicated, all future references in this Memorandum refer to Exhibit 2, Dr. Wiet's deposition testimony.

2. Dr. Wiet has no training, education, experience or knowledge regarding the design, manufacture, construction, marketing, labeling, sale or distribution of ear candles.  (p. 8, lines 9-11; p. 9, lines 2-22; p. 60, lines 3-10; p. 68, lines 6-17.)

3. Dr. Wiet has never inspected, examined or otherwise viewed ear candles. (p. 25, lines 22-24.)

4. Dr. Wiet has not performed any analysis, investigation or research regarding the design, manufacture or construction of the specific ear candle used by the plaintiff or its raw materials or components.  (p. 25, lines 9-14.)

5. Dr. Wiet did not view, analyze or assess the candle utilized by the plaintiff and only saw a model of the type of candle involved in this litigation one hour prior to his deposition.  (p. 30, lines 1-2.)

6. Dr. Wiet has not performed any investigation, analysis or evaluation of industry standards or other standards regarding the design, manufacture, distribution or sale of ear candles.  (p. 27, lines 23-24; p. 28, lines 1-4.)

7. Dr. Wiet is not familiar with the components or raw materials used in ear candles and he cannot identify the components or raw materials that burn when an ear candle is lit.  (p. 48, lines 6-12; p. 49, lines 12-13, 15-19.)

8. Dr. Wiet has never seen an ear candle burn (p. 50, lines 6-8), and he has never performed any tests of an ear candle.  (p. 25, lines 22-24.)

9. Dr. Wiet has no specialized knowledge, training or experience related to quality control of ear candles.  (p. 9, lines 23-24; p. 10, lines 1-2.)

10. Dr. Wiet has not performed any analysis, investigation or assessment of the differences in the design and manufacture of various ear candles.  (p. 26, lines 4-9.)

11. The only written report that Dr. Wiet ever authored relating to whether ear candles are defective or unreasonably dangerous was the one he authored at the request of the plaintiff.  (p. 114, lines 13-18.)

12. Prior to being retained in this case, Dr. Wiet had not engaged in the scientific study or inquiry of ear candles.  (p. 114, lines 23-24; p. 115, lines 1-4.)

13. Dr. Wiet has never written an article or book regarding the methodology for ear candling.  (p. 115, lines 14-18.)

5

14. Dr. Wiet does not have any training, experience or knowledge in the methodology or standard of care for administering ear candles. (p. 116, lines 5-9, 22-24; p. 117, lines 1-3; p. 118, lines 9-13.)

15. Dr. Wiet does not possess any education, experience, training or specific knowledge regarding what a retailer should do with regard to the sale or distribution of ear candles or the warnings or instructions to accompany ear candles. (p. 68, lines 6-17.)

C. <u>Dr. Wiet's Lack of Research</u>

The lack of any research conducted by Dr. Wiet before authoring his report and the paucity of research conducted approximately one year later and a few days before his deposition further expose the lack of Dr. Wiet's qualifications to render opinions regarding ear candles:

16. Prior to drafting the February 2009 Expert Identification, Dr. Wiet did not perform any research regarding the use of ear candles or ear candling procedures. (p. 12, lines 9-22; p. 104, lines 4-15.)

17. Dr. Wiet performed all the research upon which he relied in his deposition testimony only one week prior to his deposition and he did not have this research available at the time he drafted his Expert Identification. (p. 12, lines 9-23; p. 103, lines 2-7; p. 104, lines 4-15.)

18. Dr. Wiet conducted research solely through a Google and Public.Net search in this matter. (p. 13, lines 9-11; p. 14, lines 3-5.)

19. At his deposition, Dr. Wiet produced seven articles which primarily deal with the efficacy of claims of ear candling. (p. 105, lines 13-17.)

20. The articles utilized by Dr. Wiet to render his opinions at his deposition are based upon case reports and anecdotal evidence. (p. 105, lines 18-24.)

21. Dr. Wiet has a vague memory of reading other articles regarding ear candling during his 30 years of practice but he cannot identify the literature. (p. 104, lines 16-24; p. 105, lines 3-7.)

D. <u>Dr. Wiet's Lack of Information regarding Plaintiff's Accident</u>

22. The only information Dr. Wiet received about how the plaintiff's accident occurred came from plaintiff's counsel and he did not review any written

6

information or depositions about the accident.  (p. 35, lines 12-16; p. 35, lines 4-6, 8, 11.)

23. Dr. Wiet possesses no information regarding the position in which the plaintiff was placed at the time of the ear candling procedure (i.e., whether she was vertical, horizontal or prone).  (p. 35, lines 12-15; p. 36, lines 3-8.)

24. Dr. Wiet does not know how the ear candle was inserted into or removed from the plaintiff's ear.  (p. 36, lines 9-10.)

25. Dr. Wiet lacks any information about whether any precautions were taken during the plaintiff's ear candling procedure.  (p. 36, lines 13-16.)

26. Dr. Wiet does not have any information regarding how the candle was stored or maintained from the time the plaintiff purchased it until the time it was used.  (p. 28, lines 10-16.)

27. Dr. Wiet is unaware of the purpose for which the plaintiff purchased an ear candle.  (p. 68, lines 1-5.)

28. Dr. Wiet has no information regarding any representations made about the benefits derived from or warranties associated with the use of the ear candle purchased by the plaintiff.  (p. 60, lines 3-24.)

29. Dr. Wiet has no information that the manufacturer, distributor or retailer herein made any representations regarding the ear candle (p. 66, lines 7-14.), and he has never reviewed any packaging, labeling, warnings, warranties or other written material accompanying ear candles.  (p. 25, lines 22-24.)

30. Dr. Wiet did not review or read any instructions accompanying or associated with the ear candle utilized by the plaintiff.  (p. 117, lines 4-6.)

E.  Dr. Wiet Performed No Scientific or Reliable Inquiry

31. Dr. Wiet based his opinions upon three sources:  (1) the articles he read after he executed his Expert Identification; (2) his experience in treating three patients during a 10 year period who had damage to the ear canal or tympanic membrane after undergoing ear candling procedures; and (3) anecdotal information from other otolaryngologists regarding injuries to the ear canal incurred by patients who underwent ear candling procedures.  (p. 12, lines 10-17; p. 20, lines 3-10; p. 40, lines 1-12; p. 102, lines 15-19; p. 104, lines 9-15.)

32. Dr. Wiet did not know if the injuries related to the accidents involving his three patients and those of other otolaryngologists were caused by the

7

design, manufacture, or construction of ear candles or by inappropriately performed procedures. (p. 40, lines 13-24; p. 41, lines 1-5.)

33. Dr. Wiet agrees that the vast majority of people who use ear candles do not incur injury and he cannot identify the percentage or number of individuals using ear candles who are injured. (p. 68, line 24; p. 69, lines 1-5, 18-22; p. 109, lines 17-23.)

34. Dr. Wiet is unaware of the number of ear candles that have been sold or distributed in the United States. (p. 39, lines 12-15.)

35. Dr. Wiet is unaware of the number of individuals per year who use ear candles without incident. (p. 109, lines 17-23.)

36. Dr. Wiet does not possess any information regarding the ratio between the number of individuals who use ear candles and the number who are injured. (p. 109, lines 18-23.)

37. Dr. Wiet agrees that the fact that ear candling may have no benefit in the treatment of any condition or illness involving the human ear does not make the product defective or unreasonably dangerous. (p. 106, lines 17-24; p. 107, lines 1-6.)

38. Dr. Wiet agreed that a person using an ear candle can obtain some non-medical benefit, such as relaxation to improve the individual's state of mind or emotional well-being. (p. 64, lines 11-20.)

39. Dr. Wiet agrees that just because a product has a potential to cause injury does not mean that the product is unreasonably dangerous. (p. 107, lines 2-6.)

40. Dr. Wiet does not claim that the ear candle utilized herein had a specific defect, only that ear candles can be generally defective. (p. 114, lines 6-12.)

41. Dr. Wiet acknowledges that a significant number of people are seen in the emergency room on a yearly basis after having injured their ears with a Q-tip and that Q-tips cause more injuries than ear candles do on a yearly basis. (p. 110, lines 22-24; p. 111, lines 1-5, 10-13.)

42. Dr. Wiet agrees that the potential damage to the structures of the middle ear purportedly caused by ear candles is not subject to quantitative analysis. (p. 111, lines 7-11, 15-20; p. 113, lines 13-18.)

## **DR. WIET IS NOT QUALIFIED TO RENDER AN**
## **EXPERT OPINION REGARDING EAR CANDLES**

Defendant, Wild Oats, does not challenge Dr. Wiet's education, training and experience in the field of otolaryngology. His curriculum vitae discloses an impressive career as a physician, professor and author.

However, Dr. Wiet readily admits that he has no knowledge, training and education with regard to ear candles. He has never inspected, examined or otherwise viewed an ear candle. He has never seen an ear candle burn. He cannot identify the components or raw materials comprising an ear candle. He does not know how they are made. He has no specialized knowledge or training related to their design, manufacture, construction or quality control, and he cannot assess the differences in the design and manufacture of various ear candles. He also is not aware of industry standards regarding ear candles, and he does not know what a retailer should do with regard to the sale or distribution of ear candles. Finally, he is not familiar with any warnings or instructions associated with ear candles and he does not know how ear candles should be administered.

In addition, Dr. Wiet performed no analysis, investigation or research regarding the design, manufacture or construction of the specific ear candle or even the type of ear candle used by the plaintiff. He cannot speak with any authority about whether the plaintiff's ear candle, or its raw materials or components, are similar to other ear candles used in the general population.

Any scant knowledge Dr. Wiet obtained about ear candles came from a Google research he performed <u>after</u> he rendered his opinions. Prior to that, he only had a vague memory of some articles he had read regarding ear candling but he could not

9

identify the literature. Furthermore, the articles that Dr. Wiet did produce at his deposition primarily deal with the claims of efficacies and none of the articles were subject to peer review.

Dr. Wiet's glaring lack of knowledge, training and education in the field of ear candles flies in the face of Rule 702's minimum threshold requirements regarding an expert's qualifications. The only apparent reason advanced by plaintiff to qualify Dr. Wiet as an expert is that he is a board certified otolaryngologist. However, this Circuit has specifically rejected the contention that medical experience alone is sufficient to qualify an expert to testify regarding an issue not within the reasonable confines of the physician's subject area. Ralston v. Smith and Nephew Richards, Inc., 275 F.3d 965, 969-970 (10th Cir. 2001); Alexander v. Smith and Nephew, 98 F.Supp.2d 1310, 1315 (N.D. Ok. 2000).

In Ralston, the plaintiff's expert was a board certified orthopedic surgeon who expressed an opinion regarding the adequacy of warnings for a nailing device used to surgically repair a fracture. Plaintiff's physician admitted that she knew little if anything about the subject and she had not done any research regarding it. She also had never published any articles about the nailing device or a comparable product, nor had she drafted a surgical technique or warning for such a product. The Ralston court held that the possession of a medical degree was insufficient to qualify the physician to testify as to the advantage of a spinal fixation device, the medical causation of spine-related ailments, or the mechanical functioning of the medical device. See also, Ronwin v. Bayer Corporation, 332 Fed.Appx. 508, 512 (10th Cir. 2009) (Plaintiff's physician, a surgeon with over 50 years of experience, was deemed not qualified to testify because

he admittedly had no practical experience or training with the drug at issue); <u>Downey v. Deere and Company</u>, 2005 WL 6011255 (D. Kan. October 11, 2005) (Disqualifying an expert engineer, with a background in metallurgy and product liability, because he knew nothing about tractor transmissions in general or about the model at issue in particular, and admitted that he did not understand how the shift linkage worked or how it differed from a different design); <u>Barrett v. Rhodia</u>, 606 F.3d 975, 981 (8th Cir. 2010) (A board certified allergist who examined the plaintiff two years after the incident, consulted with a standard toxicology textbook and reviewed a medical article for symptoms of hydrogen sulfide exposure lacked the education and experience to testify about whether and how hydrogen sulfide gas dispersed, based upon her concession that she did not know how the gas dispersed, she was not aware of the distance between the plaintiff and the drum alleged to be the source of the gas and she did not know the concentration of the gas in the drum).

## **DR. WIET'S TESTIMONY IS NOT RELIABLE**

Dr. Wiet's opinion that ear candles are defective and unreasonably dangerous also does not meet the second requirement of the <u>Daubert</u> test, namely, that the expert's testimony is reliable and based upon reasoning or methodology that is scientifically valid. Clearly, Dr. Wiet's conclusions were not reached after exhaustive or tested scientific inquiry. Once again, he admits that he did not conduct any research prior to expressing his opinions and that his subsequent research was limited to a general Google search. Dr. Wiet did not analyze, investigate or research standards for, or the design, manufacture, construction, sale or quality control of ear candles, their raw materials or components, any alternative designs, or the administration of ear candling.

11

Admittedly, of over the 100 articles and publications that Dr. Wiet has authored, he has performed no research or published any information related to any of these subjects.

Dr. Wiet also does not know the number of individuals injured by ear candles or the percentage of the general population that are injured by use of the product. He also does not know how many ear candles are sold or used in any given period. Dr. Wiet also admits that the vast majority of people who use ear candles do not incur injury, and that more people are injured by using Q-Tips than ear candles.

Dr. Wiet's failure to base his opinions on proven data is similar to the weaknesses found by the court in the plaintiff's methodology in Downey, 2005 WL 6011255 at * 5. In addition, to finding that the expert engineer was not qualified to render opinions, the court also held that the metallurgical engineer expert's methods were not sufficiently trustworthy to allow him to offer opinions that a tractor-trailer contained a design defect and that this design defect caused the tractor to move forward after being placed in park. The court reached this ruling because the expert's "brief and unfruitful tinkering with the tractor's shifter does not amount to a reliable method for investigating the case and forming an opinion." The court further opined that the engineer did not reliably investigate the particular facts of the accident and design of the tractor; he could not identify a specific design defect; and he failed to take elementary steps to confirm the existence of any alleged defect. Herein, Dr. Wiet did not even investigate the plaintiff's ear candling procedure involving the plaintiff, he did not "tinker with" or even examine the plaintiff's ear candle or any ear candle in general, and he did not identify and confirm that the plaintiff's candle had any specific defect.[2]

---

[2] Dr. Wiet merely believes that ear candles are unreasonably dangerous in general. However, under Kansas law, a plaintiff in a product liability case must prove the existence of a specific defect. Jenkins v.

12

Dr. Wiet's testimony must also be rejected because it has never been tested by any methodology, or subjected to peer review and publication, and it does not have a known or potential rate of error. Instead, Dr. Wiet's opinions are based upon his minimal experience in treating three patients during a 10 year period who purportedly had damage to the ear canal from ear candling, and upon anecdotal information, including case reports and surveys, from other otolaryngologists regarding injuries to the ear canal incurred by patients who underwent ear candling procedures. Once again, Dr. Wiet does not know if the injuries sustained by his patients and those of other otolaryngologists were caused by the design or manufacture of ear candles or by ear candling procedures which were performed inappropriately.

More importantly, such anecdotal evidence, including case reports, have been repeatedly rejected by the courts as unreliable because they are not derived from scientific method and they do not contain scientific analysis with the safeguards of controlled experiments. Soldo v. Sandoz Pharmaceutical Corp., 244 F.Supp.2d 434 (W.Dist. Penn. 2003) citing, Brumbaugh v. Sandoz Pharmaceutical Corp., 77 F.Supp.2d 1153, 1156 (Dist. of Montana 1999). Rather, such reports and similar anecdotal evidence merely report symptoms observed in a patient or patients. They are based upon uncontrollable information, and are simply idiosyncratic or the result of unknown confounding factors. McClain v. Metabolife Intern, Inc., 401 F.3d 1233, 1254 (11th Cir. 2005); Kilpatrick v. Breg, Inc., 2010 WL 3168655 (C.A. 11, August 12, 2010) (Case

---

Amchem Products, Inc., 256 Kan. 602, 886 P.2d 869, 890 (1994); Garst v. General Motors Corp., 207 Kan. 2, 484 P.2d 47, 61 (1971). The mere fact that an injury arose out of the use of a product does not prove that the product was defective or unreasonably dangerous. Id. A product does not have to be designed and manufactured so that it is accident-proof or incapable of producing an injury. Id.

reports raise questions, they do not answer them.  They reflect only reported data, not scientific methodology.)

Thus, Dr. Wiet's limited personal experiences and anecdotal evidence form an insufficient basis to establish that ear candles are defective and unreasonably dangerous.  In fact, Dr. Wiet's admission that a significant number of individuals are seen in the emergency room on a yearly basis after suffering Q-tip injuries and that more people are injured by Q-tips than by ear candling underscores the unreliability of his opinion that ear candles are defective or unreasonably dangerous.

Dr. Wiet's opinions also do not meet other important <u>Daubert</u> considerations, mainly whether his expertise was developed solely for litigation, as opposed to naturally flowing from his research, and whether Dr. Wiet sufficiently connected his proposed testimony with the facts of the case.  <u>Polski v. The Quigley Corporation</u>, 538 F.3d 836, 839 (8th Cir. 2008), <u>citing</u>, <u>Sappington v. Sky Jack, Inc.</u>, 512, 530, 440, 448 (8th Cir. 2008).  Without a doubt, Dr. Wiet reached his opinions in anticipation of litigation and they did not flow from research.  Dr. Wiet admitted that he did not conduct any research until over one year after he had authored his report expressing his opinions, and then, only in anticipation of his deposition.  Previously, he had conducted no research and still does not possess any knowledge related to the manufacture, design or construction of ear candles or ear candle components; their design differences; quality control or procedures for use; and he was and still remains unaware of any manufacturer or seller representations about ear candles.  In fact, prior to his retention by plaintiff, Dr. Wiet had never before expressed a product liability opinion.

Dr. Wiet also did not connect his testimony to the facts of this case and he did not employ the same level of intellectual rigor that he has so obviously utilized in the field of otolaryngology. Dr. Wiet has demonstrated absolutely no familiarity with the plaintiff's accident or the particular product used in her ear candling procedure and therefore he could not possibly tie in his testimony to the facts of this case. He also did not engage in the type of thorough or independent study or investigation of ear candles that he has apparently employed in drafting his treatises in otolaryngology, an important <u>Kumho Tire</u> factor. 526 U.S. at 150, 119 S.Ct. 1167. Accordingly, Dr. Wiet's opinions and testimony regarding the "safety" of ear candles does not meet the <u>Daubert</u> definition of reliability and therefore they must be barred.

## **CONCLUSION**

Although Dr. Wiet appears to be a preeminent physician in the field of otolaryngology, he is not qualified to give expert testimony in this case regarding the "safety" of the ear candle nor are his opinions with regard to product reliable. Dr. Wiet concedes that he is not aware of any specific design or manufacturing defect with regard to the ear candle involved in the plaintiff's accident. Rather, he merely believes that ear candles are unreasonably dangerous in general without providing any specifics. It is clear that Dr. Wiet is basing his opinions concerning the ear candle on the fact that he has treated three patients with ear candling injuries and has heard that other doctors have done so as well. Therefore, in his opinion, ear candles must be defective and unreasonably dangerous. However, Dr. Wiet does not identify a specific design or manufacturing defect in the particular ear candle involved in plaintiff's accident, which is a pre-requisite to establishing liability under Kansas law. Furthermore, Dr. Wiet's

conclusion, even if sincerely felt, is not supported by scientifically reliable principles and methods. His lack of qualifications and untested, non-specific beliefs have absolutely no foundation on which to express the opinions at issue and therefore Dr. Wiet should be precluded from rendering such opinions.[3]

                                  Respectfully submitted,

                                  */s/ Joseph D. Ryan*
                                  _____
                                  LAW OFFICES OF JOSEPH D. RYAN, P.C.
                                  1896 Sheridan Road, Suite 240
                                  Highland Park, Illinois  60035
                                  Telephone:  (847) 432-5971
                                  Facsimile:  (847) 432-5975
                                  jryan@ryanlawoffices.com
                                  **ATTORNEY FOR DEFENDANT**
                                  **WILD OATS MARKETS, INC.**

                                  */s/ Angela D. Lucas*
                                  _____
                                  Angela D. Lucas        KS No. 20520
                                  SCHMITT MANZ SWANSON & MULHERN, P.C.
                                  1000 Walnut Street, Suite 800
                                  Kansas City, Missouri  64106
                                  Telephone:   (816) 472-5310
                                  Facsimile:     (816) 472-5320
                                  alucas@schmittmanzlaw.com
                                  **ATTORNEY FOR DEFENDANT**
                                  **WILD OATS MARKETS, INC.**

---

[3] Wild Oats also adopts and incorporates any motions filed on behalf of the co-defendant, Karen Kenney, and third-party defendant, Wally's Natural Products, Inc. and United Natural Foods, Inc., to bar and/or limit the testimony of Dr. Richard Wiet.

## Certificate of Service

I hereby certify that on August 25, 2010, a true and correct copy of the above and foregoing was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system, including the following:

John G. O'Connor
ROBB TAYLOR & O'CONNOR
827 Armstrong Avenue
Kansas City, Kansas  66101
Telephone:   (913) 321-9600
Facsimile:    (913) 321-0199
jack_oconnor2000@yahoo.com
**ATTORNEY FOR PLAINTIFF**

Jeffrey Siegel
FRISCHER & ASSOCIATES, CHTD.
13220 Metcalf, Suite 100
Overland Park, Kansas  66213
Telephone:   (913) 345-0100
Facsimile:    (913) 345-1802
wthomas@frislaw.com
**ATTORNEY FOR DEFENDANT KAREN S. KENNEY**

Derrick A. Pearce
WALLACE, SAUNDERS, AUSTIN, BROWN AND ENOCHS, CHTD.
10111 West 87th Street
P.O. Box 12290
Overland Park, KS 66282-2290
Telephone:   (913) 888-1000
Facsimile:    (913) 888-1065
dpearce@wallacesaunders.com
**ATTORNEY FOR DEFENDANTS**
**WALLY'S NATURAL PRODUCTS, INC.**
**AND UNITED NATURAL FOODS, INC.**

          */s/ Angela D. Lucas*
          _____
          Angela D. Lucas
          For the Firm