IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANNE F. DANAHER,               )
                               )
        Plaintiff,             )
                               )
v.                             )        Case No. 08CV-2293 JAR/DJW
                               )
WILD OATS MARKETS, INC.,       )
UNITED NATURAL FOODS, INC.,    )
WALLY'S NATURAL PRODUCTS, INC.,)
and KAREN S. KENNEY,           )
                               )
        Defendants.            )

### DEFENDANT WILD OATS MARKETS, INC.'S MOTION
### FOR SUMMARY JUDGMENT AND MEMORANDUM IN
### SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW defendant/cross-claimant, Wild Oats Markets, Inc. ("Wild Oats"), by and through its attorneys of record, Law Offices of Joseph D. Ryan, P.C. and Manz Swanson & Mulhern, P.C., and pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves this court to enter judgment in its favor and against the plaintiff, Anne Danaher, and submits the following as its motion and memorandum in support of summary judgment in its favor.

### I. STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT

Anne Danaher's right ear was injured by an ear candle, a hollow, cylindrical-shaped piece of wax-coated linen, which allegedly was purchased from the defendant, Wild Oats Markets, Inc.'s ("Wild Oats"), and administered by the co-defendant, Karen Kenney.  As a consequence, the plaintiff filed suit against defendant Kenney, alleging that she was negligent in performing the ear candling procedure.  The plaintiff also

asserted a product liability claim against Wild Oats under the theories of negligence, gross negligence, breach of warranty, and strict liability.

In support of her claims against Wild Oats, the plaintiff designated an expert, Dr. Richard Wiet, on February 4, 2009.  Dr. Wiet, an otolaryngologist, expressed his belief that the ear candle involved in plaintiff's accident and all other ear candles are defective, unreasonably dangerous, and not reasonably safe for use.  The deposition of Dr. Wiet was completed on July 28, 2010, and based upon the testimony given by Dr. Wiet, Wild Oats filed, on August 25, 2010, a motion to exclude that portion of Dr. Wiet's testimony pertaining to the safety of ear candles.  That motion presently is pending before the court.

## II. <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

1.     Plaintiff purchased the ear candle involved in her accident at a Wild Oats store in 2003.  (Exhibit A – Plaintiff's Deposition Transcript, pp. 53 and 138.)

2.     The plaintiff purchased the candle involved in her accident at Wild Oats after inquiring of a team member (employee) whether Wild Oats sold ear candles. (Exhibit A, pp. 140-141.)

3.     The employee responded affirmatively and walked with the plaintiff to the area of the store where the candles were on display.  (Exhibit A, pp. 140-141.)

4.     There was no other dialogue, conversation, or other information exchanged and/or provided by Wild Oats or any employee, agent, or servant of Wild Oats.  (Exhibit A, pp. 140-141, 145, 165-167.)

5.     The plaintiff then selected an ear candle without any involvement or assistance from a Wild Oats' employee.  (Exhibit A, pp. 140-141, 145, 165-167.)

6.      The plaintiff never mentioned to an employee of Wild Oats the purpose for which she was buying the ear candle.  (Exhibit A, p. 167.)

7.      An employee of Wild Oats did not make any statements regarding the quality of the ear candle, what the ear candle could or could not do, or any statements that were deemed by the plaintiff to be some type of warranty.  (Exhibit A, pp. 165-167.)

8.      In 2006, after possessing the unused ear candle for three years, the plaintiff decided to employ defendant Kenney to perform an ear candling procedure. (Exhibit A, pp. 88-90.)

9.      Defendant Kenney placed the candle through a hole in a piece of cardboard and then inserted one end of the candle into the plaintiff's right ear while she laid on her left side.  (Exhibit A, pp. 88-90.)

10.     Plaintiff assumes that the heat from the flame of the candle melted a portion of the candle and that liquefied wax ran into her ear causing her ear drum to burn.  (Exhibit A, p. 87.)

11.     The plaintiff, when asked whether her injury was caused by the acts or omissions of defendant Kenney or the product itself, stated "[i]n reality it was caused by Karen Kenney by how she allowed it to burn down and it started melting the wax and it rolled down into my ear." (Exhibit A, p. 103.)

12.     The plaintiff specifically testified that she has never formed a "belief that the ear candle that was used was defective in some way."  (Exhibit A, p. 183.)

13.     Although the plaintiff has filed this product liability lawsuit against Wild Oats, the plaintiff's expert, Dr. Richard Wiet, cannot identify and he is not aware of any specific defect with regard to ear candles in general, and more importantly, the ear

candle involved in plaintiff's accident.   (Exhibit B – Dr. Richard Wiet's Deposition Transcript, p. 114.)

14.    Dr. Wiet did not render any opinions with regard to a standard of care for Wild Oats or any other retailer such as Wild Oats.   (Plaintiff's Expert Identification – Doc. 30.)

15.    Dr. Wiet does not have any education, experience, training, or specialized knowledge as to what a retailer should or should not do with regard to the sale or distribution of ear candles, nor with regard to warnings or instructions to accompany ear candles.  (Exhibit B, p. 68.)

16.    Wild Oats has never designed or manufactured ear candles or their component parts.  (Exhibit C – Affidavit of Margot Roth, Pars. 8-9.)

17.    Wild Oats did not have any knowledge of any alleged defect with respect to the candle before plaintiff's accident.  (Exhibit C, Pars. 6-7.)

18.    Prior to the plaintiff's accident, Wild Oats did not receive any complaints, claims, or allegations that any ear candle it sold caused an injury or was defective in any manner.  (Exhibit C, Pars. 6-7.)

19.    Products, such as ear candles, are obtained by Wild Oats through distributors and/or manufacturers, and such products are sold without alteration or modification by displaying such products within the store.  (Exhibit C, Par. 10.)

20.    The ear candle allegedly involved in plaintiff's accident was purchased by Wild Oats through United Natural Foods, Inc. and manufactured by Wally's Natural Products, Inc. ("Wally's").  (Exhibit C, Par. 11.)

21.    Wally's, the manufacturer of the ear candle in plaintiff's accident, is subject to service of process under the laws of the State of Kansas, and was in fact served with process in this action and is subject to the jurisdiction of this court.   (Return of Summons – Doc. 37.)

22.    Wally's is insured for the occurrence forming the basis of this lawsuit and is entitled to indemnity in the amount of $1,000,000 against any judgment rendered against it.  (Exhibit D – Wally's Answers to Interrogatories, No. 8.)

### STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavit shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   A movant may obtain summary judgment simply by pointing out to the Court a lack of evidence for the other party on an essential element of that party's claim.   *Adams v. American Guaranty & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000).  The non-moving party, to avoid summary judgment, must come forward with "specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  A failure to establish the existence of an essential element to a party's case will result in the entry of summary judgment in favor of the movant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548 (1986).

## ARGUMENT

Plaintiff's products liability claim against Wild Oats is premised upon negligence, gross negligence, strict liability, and breach of warranty.  The plaintiff also asserts that she is entitled to punitive damages.  Wild Oats, for the reasons set forth below, is entitled to summary judgment on all of plaintiff's theories of liability as well as the claim for punitive damages.

A.   The Plaintiff Cannot Establish That The Ear Candle Was Defective Or Unreasonably Dangerous And That Such Condition Existed At The Time That It Left The Possession Or Control Of Wild Oats.

Although the plaintiff alleges that the ear candle that caused her injury was defective and unreasonably dangerous, there are several "hard and fast" rules of law that must be followed in order for plaintiff to satisfy her burden of proof and establish liability.  The plaintiff must prove, regardless of whether the plaintiff is claiming damages under negligence, strict liability, or breach of warranty, that (1) the product was defective, (2) the product was defective at the time it left the defendant's possession or control, and (3) the plaintiff suffered damages as a result of such defect.  *Lane v. Redman Mobile Homes, Inc., 5 Kan.App.2d 729, 733, 624 P.2d 984, rev. denied, 229 Kan. 670 (1981); Miller v. Lee Apparel Company, Inc., 19 Kan.App.2d 1015 1031, 881 P.2d 576, 588 (1994) (All product liability actions); Black v. Don Schmid Motor, Inc., 232 Kan. 458, 657 P.2d 517 (1983); Hodges v. Johnson, 39 Kan.App.2d 220, 223, 178 P.3d 59, 62 (2008) (Breach of Warranty).*

A party in the distributive chain of a product is not an insurer against injury and does not have to design, manufacture, or distribute products that are accident proof or incapable of producing an injury.  *Garst v. General Motors Corp., 207 Kan. 2 484 P.2d*

*47 (1971).*  Therefore, the mere fact that a plaintiff has been injured by a product does not establish liability, nor can a plaintiff establish liability merely by showing that a different or alternative design would have alleviated or averted the plaintiff's injuries.  *Id.*

Furthermore, to establish that a product is defective or unreasonably dangerous, the plaintiff must offer evidence of a *specific defect* in the product.  *Jenkins v. Amchem Products, Inc., 256 Kan. 602, 886 P.2d 869, 890 (1994); Garst v. General Motors Corp., 207 Kan. 2, 484 P.2d 47 (1971).*  A failure to identify a specific defect in a product precludes a finding of liability.  *Id.; McCroy v. Coastal Mart, Inc., 207 F.Supp.2d 1265 (D. Kan. 2002)* (Court rejected plaintiff's assumption that a drink was excessively hot and therefore defective and unreasonably dangerous solely based upon the fact that the plaintiff was burned because such an argument amounts to post hoc, ergo propter hoc rationale, and is contrary to Kansas law requiring proof of an identifiable and specific defect in a product).

The plaintiff only has two possible witnesses to call at the time of trial in an attempt to establish that the ear candle in plaintiff's accident was defective.  These two witnesses are the plaintiff herself as well as the plaintiff's expert witness, Dr. Richard Wiet.

However, the plaintiff is not qualified as an expert in the field of ear candles or ear candling, and has not identified herself as such.  Furthermore, even if she possessed the necessary qualifications to offer an opinion that the ear candle involved in her accident was defective, she does not have such an opinion.  Quite to the contrary, the plaintiff testified that despite her injury and everything that she has learned

since the date of the accident, she has not formed a belief that the ear candle was defective in any way.

Although the plaintiff's designated expert, Dr. Richard Wiet, is willing to opine that ear candles are defective and unreasonably dangerous, Wild Oats has filed a motion to bar Dr. Wiet from rendering such opinions based upon Dr. Wiet's opinions failing to satisfy the requirements of Rule 702 of the Federal Rules of Civil Procedure and the pronouncements in *Daubert* and its progeny.  For the sake of judicial economy, the arguments set forth in the motion to bar will not be repeated here, but are adopted by Wild Oats in support of its motion for summary judgment.

If the court grants Wild Oats' motion to bar the testimony of Dr. Wiet regarding the alleged dangerous condition of ear candles, the plaintiff will be left without any witnesses to testify regarding the defective, unreasonably dangerous, or unsafe condition of ear candles.  The plaintiff will not be able to offer any evidence that there exists a defective or unreasonably dangerous condition in the ear candle involved in plaintiff's accident, that the alleged defective and unreasonably dangerous condition in the ear candle existed at the time it left the possession and control of Wild Oats, and/or that any alleged defective and unreasonably dangerous condition caused or contributed to plaintiff's injuries.

The denial of the motion to bar still will not help the plaintiff in establishing a prima facie case.  If the court denies the motion to bar the testimony of Dr. Wiet, then his opinions at the time of trial will merely be that ear candles in general are defective and unreasonably dangerous.  Dr. Wiet has not identified, and he is not aware of, any specific defect with regard to ear candles in general, and more importantly, the specific

model or type of ear candle involved in plaintiff's accident.  Dr. Wiet does not even identify whether the alleged defect is a design or manufacturing defect, and he does not have an opinion regarding any instructions or warnings, or whether any instructions or warnings were either adequate or defective.  Proof that a product has a specific defect is an essential element of a product liability claim and therefore, even if Dr. Wiet's testimony is admissible, it is insufficient to satisfy the plaintiff's burden on this essential element.

In addition, since Dr. Wiet has not identified a specific defect in the candle, he obviously cannot state that that a specific defect caused or contributed to plaintiff's injuries.  Furthermore, Dr. Wiet has not opined that the unspecified and unidentifiable defect in the candle involved in plaintiff's accident existed at the time it left the possession or control of Wild Oats.  The plaintiff's failure to satisfy either of these two other elements of a prima facie case entitle Wild Oats to summary judgment.

To find that Dr. Wiet's opinions satisfy the elements for proving a product liability claim would "fly in the face" of and is contrary to well established product liability law in Kansas.  Without identifying a specific defect in the ear candle, the plaintiff would be able to establish the liability of Wild Oats solely based upon the fact that she sustained an injury through use of a product.  Wild Oats, in essence, would be the insurer of the plaintiff against any injury and would be held accountable for failing to make the ear candle accident proof and incapable of causing an injury.  Furthermore, the liability of Wild Oats would be established without Wild Oats ever being apprised as to whether the ear candle contained a design or manufacturing defect, and without any party to the

litigation having the opportunity to discuss and address alternative designs for the unspecified and unidentified defect.

B.    Wild Oats Is An "Innocent Seller"

Kansas law provides a means by which a "product seller," defined to include a distributor or retailer of the relevant product, shall not be liable in a product liability claim arising from an alleged defect in a product.  K.S.A. 60-3302 and 3306.  To be afforded the protection provided by this statutory provision, the product seller must establish that:

(a)  Such seller had no knowledge of the defect;

(b)  Such seller in the performance of any duties the seller performed, or was required to perform, could not have discovered the defect while exercising reasonable care;

(c)  The seller was not a manufacturer of the defective product or product component;

(d)  The manufacturer of the defective product or product component is subject to service of process either under the laws of the state of Kansas or the domicile of the person making the product liability claim; and

(e)  Any judgment against the manufacturer obtained by the person making the product liability claim would be reasonably certain of being satisfied.

Wild Oats has satisfied these five elements of the "innocent seller" statute and therefore is entitled to summary judgment with regard to all of plaintiff's claims.

1.    Wild Oats Had No Knowledge Of The Alleged Defect

The first two elements of the innocent seller statute deal with whether the seller had actual or constructive knowledge of the product's alleged defect.  A preliminary step in ascertaining whether Wild Oats had knowledge of any alleged defect in the ear candle involved in plaintiff's accident is for plaintiff to identify the defect.  However, the plaintiff and her expert, Dr. Richard Wiet, have not identified any specific defect in any

ear candle let alone the ear candle involved in plaintiff's accident.  Because the plaintiff cannot even identify a specific defect in the ear candle involved in her accident, it would be impossible for Wild Oats to have known about the alleged unspecified and unidentified defect.

Plaintiff's failure to identify a specific defect in the ear candle, intentional or otherwise, makes it difficult for Wild Oats to comment in great detail about Wild Oats' lack of knowledge of a defect.  The plaintiff has created a situation comparable to placing Wild Oats in a room with instructions that it can leave by walking through the door, but the plaintiff, who is in control of the light switch, then turns off all the lights. Wild Oats is left to navigate in a darkened room because of plaintiff's actions.

Regardless of plaintiff's failure to identify a specific defect with regard to the ear candle, the facts are that Wild Oats did not have any knowledge about any defect in the candle involved in plaintiff's accident.  The unrebutted evidence is that Wild Oats has never received any complaints, claims, or allegations that anyone, other than the plaintiff, sustained an injury while using an ear candle.  Nothing in its experience indicates that any ear candle it sold was defective.

2.      Wild Oats Did Not Manufacture The Ear Candle Or Any Component

The third element of the innocent seller statute is easily established.  Wild Oats has never been engaged in the design or manufacture of ear candles or any component of an ear candle.  To the contrary, it merely is a retailer, and obtained the ear candle through distribution channels from Wally's, the manufacturer of the ear candle.

3.      The Manufacturer Of The Ear Candle Is Subject To Service Of Process

The fourth element of the innocent seller statute requires that the manufacturer of the defective product or product component be subject to service of process either under the laws of Kansas or the domicile of the person making the product liability claim.  This element also is easily satisfied and in fact, has already been proven in this case.  Wally's was actually served with process in this lawsuit and is presently a party to the litigation.

4.      Wally's Could Satisfy Any Judgment

The fifth element of the statute pertains to whether a potential judgment against a manufacturer could be satisfied.  To satisfy this element of the statute, a party need only show with "reasonable certainty" that such a judgment could be satisfied.

The plaintiff is not seeking any wage loss claim or other economic damages besides medical expenses which are less than $50,000.[1]  Any award for non-economic damages is capped at $250,000 pursuant to Kansas law.  K.S.A. 60-19a02.  Therefore, the maximum amount of any judgment that Ms. Danaher could conceivably receive is less than $300,000.  Wally's is covered by an insurance policy providing coverage for this occurrence in the amount of $1,000,000.  Therefore, the potential recovery by the plaintiff at the time of trial represents approximately 30% of the insurance coverage available to satisfy any "theoretical" judgment that could be obtained against Wally's.

---

[1] The parties have reached an agreement to enter into a stipulation whereby certain medical expenses shall be excluded from evidence.  It is Wild Oats' understanding that this will result in plaintiff's medical expenses amounting to approximately $30,000, but have specified the amount as $50,000 to view the issue in a light most favorable to the plaintiff.

5.      The Manufacturer Does Not Have To Be A Party To The Proceedings

The plaintiff may argue that the innocent seller statute is not available to Wild Oats because Wally's is not a direct defendant with regard to plaintiff's claims and therefore a judgment cannot be rendered against Wally's in favor of the plaintiff. However, the manufacturer need not actually be a party to the litigation in order for a product seller, such as Wild Oats, to be dismissed from a lawsuit pursuant to the innocent seller statute.  *Jackson v. Thomas, 28 Kan.App.2d 734, 21 P.3d 1007 (2001).*

In *Jackson*, a mechanic developed a rash after coming into contact with a solvent used to clean automobile parts.  A products liability action was filed against two sellers in the chain of distribution for the solvent.   Both sellers filed motions for summary judgment seeking their dismissal pursuant to the innocent seller statute.  The trial court dismissed the sellers from the proceedings despite the fact that the manufacturer was not an actual party to the litigation.  The plaintiff mechanic appealed and the appellate court affirmed the dismissal of both sellers despite the fact that the actual manufacturer of the solvent was not and never had been a party to the litigation.  The appellate court could have been addressing the facts in the case before this court when it held:

> Neither WSC nor Arrowhead Marketing were manufacturers of the solvent. The manufacturers of the solvent were both subject to service of process in the state of Kansas, and the trial court concluded that any judgment [plaintiff] may have obtained against the manufacturers would be reasonably certain of having been satisfied.
>
> It appears to us that the legislature has decided to shift the product liability responsibility to the manufacturer of the product under the circumstances shown in this case.  In other words, when the seller of the product in question was not the manufacturer and could have not discovered the defect in the product, it is immune from liability when the manufacturer of that product can be served in Kansas and when any judgment against the manufacturer would be reasonably certain of being satisfied.  All those requirements are satisfied in the uncontroverted facts in this case and we

13

agree with the trial court's conclusion that the defendants in this case were immune from liability under provisions of K.S.A. 60-3306.

28 Kan.App.2d at 738, 21 P.3d at 1010.

The holding in *Wheeler* v. Numark Industries Co., Inc., 2006 WL 763664 (D. Kan. 2006), provides further support for the position of Wild Oats that a manufacturer does not have to be an actual party to the proceedings in order for a retailer to be dismissed pursuant to the innocent seller statute.   In *Wheeler*, the plaintiff brought a products liability action against FDL and Numark Industries.   Evidence was initially presented to the court that Numark Industries was the manufacturer of the chair involved in the litigation and FDL was a distributor.   Therefore, the court dismissed FDL pursuant to the provisions of the innocent seller statute.   Subsequently, it was determined that Himax Furniture Industry Corp., which was not a party to the litigation, was the actual manufacturer of the product instead of Numark Industries.   The plaintiff argued that it was prejudiced by the court's dismissal of FDL based upon the erroneous information concerning the manufacturer.   The court, in ruling upon plaintiff's claim, held that:

> [T]he court is not persuaded that it would have denied FDL's motion even if there was an issue over whether defendant or Himax manufactured the chair at that time.  The court dismissed FDL from the case because FDL was able to demonstrate that it was a product seller not liable for plaintiff's product liability claim by establishing the five elements of Kan. Stat. Ann. § 60-3306.  Even if Himax was known to be the manufacturer of the chair at that time, the court finds it possible that FDL still could have established the five elements of § 60-3306, and no facts in the record demonstrate otherwise.

The court in *Wheeler* refused to provide the plaintiff relief from its decision to dismiss a party, based upon the innocent seller statute, despite the fact that there had been a mistake in identifying the actual manufacturer of the product.  The court reached its decision despite the fact that the manufacturer was not and never had been a party

to the proceedings.  The court reached its decision despite the fact that the statute of limitations had expired against the manufacturer of the product and therefore the manufacturer could never be made a party to the litigation.  Thus, Kansas law is clear that a product seller, such as Wild Oats, is entitled to its dismissal from a lawsuit pursuant to the provisions of the innocent seller statute despite any argument that Wally's, as a manufacturer, is not a direct defendant with regard to plaintiff's claims or that plaintiff will never be able to obtain a judgment against Wally's.

C.     There Has Been No Breach Of A Standard Of Care

A claim of negligence requires, among other things, that the plaintiff establish a standard of care that the defendant allegedly breached.  *Garst v. General Motors Corp., 207 Kan. 2, 484 P.2d 47 (1971).*  Dr. Richard Wiet, plaintiff's designated expert, did not render any opinions with regard to a standard of care for Wild Oats or any other retailer such as Wild Oats.   The failure of Dr. Wiet to render any such opinions is understandable based upon the admissions at his deposition that he did not have any education, experience, training, or specialized knowledge as to what a retailer should or should not do with regard to the sale or distribution of ear candles, nor with regard to warnings or instructions accompanying ear candles.  Plaintiff's failure to establish the standard of care by which to evaluate the conduct of Wild Oats precludes a finding that Wild Oats breached any standard of care and thereby entitles Wild Oats to summary judgment on plaintiff's negligence claim.

D.     A Cause Of Action For Gross Negligence Is Not Recognized Under Kansas Law.

Plaintiff seeks recovery under a theory of gross negligence.  (PreTrial Order, Doc. 128, § 6(a)(3).)  However, Kansas law does not recognize degrees of negligence

but only draws a distinction between ordinary negligence and wanton conduct.  *Wagner v. SFX Motor Sports, Inc.*, 460 F.Supp.2d 1263, 1271 (D. Kan. 2006).  Thus, although the plaintiff may pursue a claim for punitive damages based upon alleged wanton conduct on the part of Wild Oats, she is precluded from asserting a cause of action based upon "gross negligence."

E.      Plaintiff Fails To Satisfy The Elements For An Implied Warranty Claim.

Plaintiff's breach of warranty claim is premised upon an alleged implied warranty of fitness for a particular purpose.  (PreTrial Order – Doc. 128, Plaintiff's Theories and Elements of Recovery, § 6(a)3 and 6(d)).  In order for such a warranty to arise, the plaintiff must offer evidence that "the seller at the time of contracting [for the purchase of goods] has reason to know any particular purpose for which the goods are required and that the buyer is relying on seller's skill or judgment to select or furnish suitable goods" for the particular purpose.  K.S.A. 84-2-315.  The comments to this statutory provision specify that for this type of warranty, "a 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question."  K.S.A. 84-2-315.  An example was incorporated into the comments section to illustrate the concept of fitness for a particular purpose and distinguish particular purpose from the ordinary use of a product.  "[F]or example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains."  *Id.*

In *Stover v. Eagle Products, Inc.*, 896 F.Supp. 1085 (D. Kan. 1995), dog kennel owners brought a product liability action against a dog food manufacturer, alleging that the manufacturer breached the implied warranty of fitness for a particular purpose with regard to a food product.  The manufacturer moved for summary judgment contending that the plaintiff's claim for breach of the implied warranty could easily be dismissed as there was no evidence to dispute that it supplied dog food for any purpose other than feeding dogs.  Because the feeding of dogs is an ordinary use of its product, the defendant argued that the plaintiffs' claim for an implied warranty of fitness for a particular purpose must fail as a matter of law.  The court, in agreeing with the defendant, held that an implied warranty of fitness for a particular purpose does not arise when goods are acquired for the ordinary purpose for which such goods are generally used.  896 F.Supp. at 1091; S*ee*, *Duffee v. Murray Ohio Mfg. Co.,* 866 F.Supp.1321, 1323 (D. Kan. 1994) (In dismissing a claim for an implied warranty of fitness for a particular purpose, the court held that a child riding and braking his bicycle are not unusual, but customary uses of a child's bicycle.)

The plaintiff cannot establish that the ear candle was purchased for a specific use which is different than the ordinary purpose for which ear candles are used.  In other words, the plaintiff purchased the ear candle to perform an ear candling procedure, the ordinary purpose for which such candle would be bought.

In addition, for the implied warranty to exist, Wild Oats would have had to have known, at the time that the plaintiff was purchasing the ear candle, that the candle was being acquired for a particular purpose.  K.S.A. 84-2-315; *Limestone Farms, Inc. v. Deere & Co., 29 Kan.App.2d 609, 614, 29 P.3d 457, 461 (2001).*  The plaintiff admits

that the only communications with Wild Oats addressed whether it sold ear candles and the location of the ear candles within its store.  Thus, a particular purpose for the ear candle, if one even existed, was never conveyed to any employee or agent of Wild Oats.

Furthermore, in order to establish the existence of the implied warranty, the plaintiff would have to show that she relied on Wild Oats' skill or judgment to select and furnish a suitable ear candle.  *Id.*  Once again, there is no evidence to satisfy this particular element of plaintiff's claim.  Plaintiff's inquiry as to whether Wild Oats sold ear candles and where they were located within the store cannot be construed that the plaintiff was relying upon Wild Oats' skill or judgment to select or furnish an ear candle for a particular purpose.

F.    Plaintiff's Implied Warranty Claim Is Barred By The Statute Of Limitations.

An action for breach of any warranty involving the sale of goods must be commenced within four years after the cause of action has accrued.  K.S.A. 84-2-725(1).  A cause of action for a breach of warranty accrues upon the tender of delivery of the goods.  K.S.A. 84-2-725(2).

The plaintiff purchased the goods involved in this matter, an ear candle, in 2003.  Any breach of a warranty associated with the ear candle therefore accrued when she took possession of the ear candle because that is when delivery was made.  The plaintiff had four years from the date of purchase within which to file her cause of action for breach of warranty and she actually filed it five years later in 2008.  Therefore, plaintiff's cause of action for breach of warranty is barred pursuant to the specific language contained in K.S.A. 84-2-725.

Although the language in K.S.A. 84-2-725 appears to be quite explicit in its application to the facts of this case, the case law interpreting the statute is not. However, in *Saraniero v. Safeway, Inc.* 540 F.Supp 749 (D. Kan. 1982), the court applied the analysis advanced by Wild Oats in granting summary judgment against a buyer who allegedly was injured when a bottle of soda pop broke as she attempted to remove its cap.  The court applied the four year statute of limitations set forth in K.S.A. 84-2-725, rather than the general two year statute of limitations for personal injuries, and held that the statute of limitations commenced upon the tender of delivery of the product.

G.    Plaintiff Is Not Entitled To Punitive Damages.

In order to recover punitive damages, the plaintiff must prove by *clear and convincing* evidence, as opposed to the preponderance of evidence, that a defendant acted with willful conduct, wanton conduct, fraud, or malice.  *Messer v. Amway Corp.*, 210 F.Supp.2d 1217 (D. Kan. 2002).  This requires the plaintiff to show that a defendant's actions were performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the wrongful act.  *Id.*  Thus, the mental attitude of the defendant and not a particular act of negligence is a crucial inquiry.  *Wagner v. SFX Motor Sports, Inc.*, 460 F.Supp.2d 1263, 1271 (D. Kan. 2006); *Hollinger v. Jane C. Stormont Hospital and Training School for Nurses*, 2 Kan.App.2d 302, 578 P.2d 1121 (1978).

In *Hollinger*, the plaintiff sought punitive damages as a result of injuries she sustained when a hospital employee, as a prank, approached plaintiff from behind while she was selling newspapers in the hospital lobby and attempted to remove a newspaper

from her bag.   The court held that, without prior notice for a propensity for "pranksterism" on the part of the hospital employee, the plaintiff could not establish any wanton or reckless disregard of plaintiff's rights, thereby warranting judgment in favor of the defendant on plaintiff's punitive damage claim.

Wild Oats did not have any knowledge of any alleged defective or unreasonably dangerous condition associated with ear candles prior to plaintiff's lawsuit.   More importantly, Wild Oats did not have any knowledge, prior to being made aware of plaintiff's accident, that there allegedly was a defective or unreasonably dangerous condition associated with the particular ear candle purchased by the plaintiff.

Even if Wild Oats had knowledge of the unspecified defect and had knowledge of a prior accident involving an ear candle, such evidence by itself would be insufficient to award punitive damages.   *Messer v. Amway Corp., 210 F.Supp.2d 1217, affirmed, 106 Fed.Appx. 678 (2002) (*A manufacturer of a chemical floor stripper, as a matter of law, did not act willfully, wantonly, fraudulently, or maliciously to support an award of punitive damages when it continued to market a floor cleaning product with existing labels after it received notice of a single claim of a burn injury prior to the incident forming the instant action).   The plaintiff cannot rely solely upon either of these two unproven facts in isolation.   *Id.*   The plaintiff has to place such evidence in the context of many other factors, including the mental state of the defendant, to ascertain whether punitive damages are justified.   *Id.*

Wild Oats is "handicapped" in providing any additional argument to rebut plaintiff's allegations of an alleged defective or unreasonably dangerous condition as well as other factors that would negate awarding punitive damages because the plaintiff

20

and her expert have not identified any specific defect in any ear candle let alone the ear candle involved in plaintiff's accident.   It is difficult to establish a lack of knowledge about a defect that has not been identified, and the acts and/or omissions that Wild Oats took or failed to take with regard to the unspecified defect or unidentified unreasonably dangerous condition.

However, based upon the present evidence, the plaintiff cannot show that Wild Oats had the requisite mental state to award punitive damages.   There is insufficient evidence to establish any willful, wanton, fraudulent, or malicious act or omission on the part of Wild Oats to justify the imposition of punitive damages.   What is even more pronounced is the fact that plaintiff cannot establish, by clear and convincing evidence, facts to support her claim for punitive damages.   Therefore, Wild Oats is entitled to summary judgment on plaintiff's claim for punitive damages.

## CONCLUSION

Wild Oats is entitled to summary judgment with regard to all of plaintiff's causes of action, including negligence, gross negligence, strict liability, and breach of warranty. Wild Oats also is entitled to summary judgment on plaintiff's claim for punitive damages.

WHEREFORE, the defendant, Wild Oats Markets, Inc., requests this court to enter an order granting summary judgment in its favor and against the plaintiff, Anne Danaher, with regard to all claims asserted against the defendant, or the entry of an order that this court deems just and equitable.

Respectfully submitted,

*/s/ Joseph D. Ryan*

_____
LAW OFFICES OF JOSEPH D. RYAN, P.C.
1896 Sheridan Road, Suite 240

21

Highland Park, Illinois  60035
Telephone:  (847) 432-5971
Facsimile:  (847) 432-5975
jryan@ryanlawoffices.com
**ATTORNEY FOR DEFENDANT
WILD OATS MARKETS, INC.**


*/s/ Angela D. Lucas*

_____

Angela D. Lucas              KS No. 20520
SCHMITT MANZ SWANSON & MULHERN, P.C.
1000 Walnut Street, Suite 800
Kansas City, Missouri  64106
Telephone:    (816) 472-5310
Facsimile:      (816) 472-5320
alucas@schmittmanzlaw.com
**ATTORNEY FOR DEFENDANT
WILD OATS MARKETS, INC.**

## Certificate of Service

I hereby certify that on August 27, 2010, a true and correct copy of the above and foregoing was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system, including the following:

John G. O'Connor
ROBB TAYLOR & O'CONNOR
827 Armstrong Avenue
Kansas City, Kansas  66101
Telephone:   (913) 321-9600
Facsimile:    (913) 321-0199
jack_oconnor2000@yahoo.com
**ATTORNEY FOR PLAINTIFF**

Jeffrey Siegel
FRISCHER & ASSOCIATES, CHTD.
13220 Metcalf, Suite 100
Overland Park, Kansas  66213
Telephone:   (913) 345-0100
Facsimile:    (913) 345-1802
wthomas@frislaw.com
**ATTORNEY FOR DEFENDANT KAREN S. KENNEY**

Derrick A. Pearce
WALLACE, SAUNDERS, AUSTIN, BROWN AND ENOCHS, CHTD.
10111 West 87th Street
P.O. Box 12290
Overland Park, KS 66282-2290
Telephone:   (913) 888-1000
Facsimile:    (913) 888-1065
dpearce@wallacesaunders.com
**ATTORNEY FOR DEFENDANTS**
**WALLY'S NATURAL PRODUCTS, INC.**
**AND UNITED NATURAL FOODS, INC.**

*/s/ Angela D. Lucas*
_____
Angela D. Lucas
For the Firm