IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANNE DANAHER,

    Plaintiff,

v.                                    Case No.:    08-CV-2293 JAR/DJW

WILD OATS MARKETS, et al,

    Defendants.

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT WILD OATS MARKETS'
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff and pursuant to Federal Rule Civil Procedure 56 and Local Rule 56.1 does respond as follows to the Motion For Summary Judgment (Document 133) filed herein by Defendant Wild Oats Markets.

**Response to Defendant Wild Oats' Allegations of Uncontroverted Facts**

1.    The Plaintiff admits the allegations of fact contained within paragraph nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15 and 21.

2.    The Plaintiff disputes that the deposition answer cited in paragraph no. 13 supports a conclusion that Dr. Wiet has given testimony that the general product category of ear candles have no specific defect. The cited deposition answer, read in context, merely reflects Dr. Wiet's statement that he was aware of no defect in the specific candle Plaintiff was using when injured, i.e., no manufacturing defect unique to that specific candle.

3.    The Plaintiff disputes the allegations contained within paragraph nos. 16, 17, 18, 19 and 20, because each of them is based solely upon Exhibit C, i.e., the affidavit of Margot Roth. The affidavit of Margot Roth does not contain information showing that the various statements within

her affidavit are based upon personal knowledge, as required by F.R.C.P. 56(e). The mere fact that Ms. Roth is presumably Global Director of Risk Management for Whole Foods, a successor entity to the Defendant Wild Oats, does not demonstrate that she has any personal knowledge of what the Defendant wild Oats or its officers, agents or employees knew about ear candles at or before the date Plaintiff purchased the ear candles on June 28, 2003. The Defendant Wild Oats was not acquired by Ms. Roth's employer until 2007, which was four years after the Defendant Wild Oats sold the ear candles to the Plaintiff. See FTC v. Whole Foods Markets, Inc., 548 F.3d 1028 (D.C. Cir. 2008).

4. The Plaintiff disputes that he allegations contained within paragraph no. 22 contain admissible evidence regarding Cross-Claim Defendant Wally's Natural Products' insured status. Exhibit D merely reflects that party's contention regarding its insured status rather than admissible evidence thereof.

### Additional Issues of Material Fact Precluding Summary Judgment

Pursuant to Local Rule 56.1(b)(2) the Plaintiff would offer the following additional issues of material fact which preclude summary judgment.

1. The ear candles which the Defendant Wild Oats sold Plaintiff on June 28, 2003, are devices which are regulated by the FDA under the Food, Drug and Cosmetic Act 21 U.S.C. § 301, et seq, because they are an "instrument or apparatus intended to affect the structure or any function of the body." See 21 U.S.C. § 321(h)(3). See also Cassens letter to Wally's Natural Products dated February 17, 2010 (Attached hereto marked as Summary Judgment Exhibit 1 and available online at www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm201890.htm ). Such devices require either an approved application for pre-market approval under 21 U.S.C. § 360e(a) or an approved application for an investigational device exemption under 21 U.S.C. § 360j(g). The

application for pre-market approval requires a manufacturer to provide, inter alia, "full reports of all information, published or known to or which should reasonably be known to the applicant, concerning investigations which have been made to show whether or not such device is safe and effective." See 21 U.S.C. § 360(c)(1)(A). Under 21 U.S.C. § 360e(d)(2) denial of such application is required if there is a lack of showing of reasonable assurance that the device is safe and effective. As of February 17, 2010 no such approvals had been sought or granted for Wally's Natural ear candles. Cassens letter, Id. The lack of such approval means that ear candles are adulterated medical devices under 21 U.S.C.§ 351(f)(1)(B). Cassens letter, Id. The FDA has also determined that Wally's Natural ear candles are misbranded devices under 21 U.S.C. § 352(j) because such devices are dangerous to health when used in the manner or with the frequency or duration prescribed, recommended or suggested in the label. Cassens letter, Id. Since no pre-market approval existed by 2010 for Wally's ear candles, a fair inference exists that no such pre-market approval had been obtained or existed for the ear candles which Cross-Claim Defendants provided to the Defendant Wild Oats and which the Defendant Wild Oats in turn sold to Plaintiff on June 28, 2003. As such, the ear candles which the Defendant Wild Oats sold Plaintiff on June 28, 2003, were not in compliance with Federal legislative regulatory standards or Federal administrative regulatory safety standards applicable to such devices.

      The Plaintiff has been unable, within the 21 days allotted for responding to this motion, to obtain affidavits or depositions from officials of the Food and Drug Administration to confirm the information contained in District Director Cassens' February 17, 2010 letter. However, if any Defendant disputes that the above and foregoing accurately summarizes the FDA's position regarding Wally's Natural ear candles, the Plaintiff would request that summary judgment be denied

under F.R.C.P. 56(f) until Plaintiff has had the opportunity to obtain such affidavits or depositions. Additionally, based upon information and belief, Plaintiff would state that such discovery would reveal that the FDA has *never* issued approvals under 21 U.S.C. 360e(a) or 21 U.S.C. 360j(g) for ear candles made by any manufacturer. Additionally, based on information and belief, such discovery will reveal that the FDA's position regarding ear candles has existed since at least November 18, 1998 (See attached Summary Judgment Exhibit 2, consisting of a letter dated November 18, 1998 from Lillian J. Gill of the FDA to John Fisher).

2. Cross-Claim Defendant Wally's has made discovery disclosures revealing that it has prepared and promulgated written warning instructions for its ear candles which direct the user to keep the head upright during use, with the candle positioned basically parallel to the floor. The instructions further warn the user never to burn the candle to less than four inches (Danaher depo., Exhibit A).

3. The Plaintiff purchased the ear candle involved in this injury on June 28, 2003, at the retail store of Defendant Wild Oats Market located at 4301 Main, in Kansas City, Missouri (Danaher depo., p. 59, Exhibit B). The Plaintiff had heard from a friend that ear candles were useful in removing ear wax (Danaher depo., p. 33).

4. The ear candles which the Plaintiff purchased were kept at the Wild Oats store in a clear acrylic jar and the candles had no packaging, markings, written instructions or warnings of which Plaintiff is aware (Danaher depo., pp. 65-67, 84-85, p. 144).

5. In 2006 the Plaintiff was having discomfort in her right ear which she attributed to water on the ear (Danaher depo., p. 58). The Plaintiff called the Defendant Wild Oats' store where the candles were purchased and asked if they could recommend someone to perform the ear candling.

The Plaintiff was told Wild Oats no longer carried ear candles and referred her to another health food store, The Herb Garden (Danaher depo., pp. 58-59). When she called The Herb Garden, Plaintiff was referred to the owner's daughter, the Defendant Kenney, for the ear candling (Danaher depo., p. 70).

6. The Plaintiff called the Defendant Kenney and made an appointment for the ear candling to be performed at Ms. Kenney's house (Danaher depo., p. 70, 73). Ms. Kenney charged the Plaintiff $20.00 to perform ear candling, which was paid in advance (Danaher depo., p. 76, 177).

7. The Plaintiff's understanding was that the ear candling process was intended to create suction or a siphon effect so that wax would come out of the ear (Danaher depo., p. 154, 156). The Plaintiff did not understand that the ear candles had wax on the inside and did not believe the procedure would burn her ear (Danaher depo., pp. 187-188).

8. The Defendant Kenney told the Plaintiff that she was unfamiliar with the ear candles Plaintiff brought with her and that they appeared to have thicker wax on them than the ear candles she was familiar with. Defendant Kenney nevertheless proceeded to perform the ear candling. (Kenney depo., pp. 61-64).

9. Rather than performing the ear candling with the Plaintiff's head upright and the ear candle basically parallel to the floor and slightly elevated, as depicted in instructions prepared by Cross-Claim Defendant Wally's Natural (Danaher depo., Exhibit A), the Defendant Kenney positioned Plaintiff on the floor with the left side of Plaintiff's face on a pillow and the ear candle extending up perpendicular to the floor (Danaher depo., p. 88, Kenney depo., p. 69).

10. The Defendant Kenney allowed the ear candle to burn down to within 3 inches of the tip (Danaher depo., p. 160, 182), at which time the Plaintiff felt hot wax roll into her ear and she told

the Defendant Kenney that she had burned her ear (Danaher depo., pp. 97-98, p.160, 182).

11. The only instruction or guidance which Defendant Kenney had received on how to perform ear candling came for her mother, who owns The Herb Garden, and from Mary Brown, an employee of The Herb Garden, as well as from reviewing an instruction pamphlet which is handed out at The Herb Garden (Kenney depo., pp. 22-24, Exhibit C).

12. The instruction pamphlet is entitled "A History of Ear Candles" and is oddly worded in the past tense. The instruction pamphlet states that "reproductions of the ancient so-called ear candles are sold as novelty items only" and "make amusing birthday candles." The instruction pamphlet further advises that manufacturers or sellers are not responsible for any accident or result of misuse (Kenney depo. Exhibit C).

13. The Defendant Kenney placed Plaintiff with her head in a horizontal position and with the ear candle extending straight up and down perpendicular to the floor, consistent with the instruction pamphlet she had obtained from her mother's store (Kenney depo., p. 38, pp. 68-69, Exhibit C).

14. The Defendant Kenney does not consider herself an expert on ear candling (Kenney depo., pp. 37, 42).

15. The Defendant Kenney does not know where her mother or The Herb Garden obtained the instruction pamphlet, i.e., Exhibit C (Kenney depo., p. 24, pp. 36-37).

16. The Defendant Kenney never saw the instructions promulgated by Cross-Claim Defendant Wally's Natural, i.e., Danaher deposition Exhibit A (Kenney depo. p. 38).

## Arguments and Authorities

The issues raised by the present motion are largely identical to those raised by Cross-Claim

Defendants Wally's Natural Products and United Natural Foods, and the Plaintiff would therefore adopt and incorporate her response to that motion.

In summary, there is no lack of evidence that all ear candles have a specific design defect. The defect is that they are not effective in treating any illnesses or condition of the ear and they create a risk, not necessarily apparent to the user, of serious injury due to hot wax dripping in the ear. Dr. Wiet's testimony and opinion in this regard are factually supported and admissible for the reasons stated in Plaintiff's responses to defendant's motion to strike his testimony.

The fact that the ear candles are categorized as adulterated, misbranded and dangerous to health by the Food and Drug Administration is further evidence that ear candles are defective. The fact that the FDA has never approved an application for the marketing of any ear candles proves conclusively that the ear candles which Defendant Wild Oats sold Plaintiff were not in compliance with legislative and administrative regulatory safety standards for such products. The Plaintiff is therefore entitled to the presumption created by K.S.A. 60-3304(b) that the product is defective. This presumption is prima facie evidence that all ear candles are defective, even in the absence of any other evidence of defect. The evidence that ear candles are defective, whether it comes from Dr. Wiet's expert testimony or by the presumption created by K.S.A. 60-3304(b), is sufficient for submission of this case on the issue of design defect under theories of negligence, implied warranty of merchantability and strict liability.

Even without Dr. Wiet's testimony and without the presumption of defect created by K.S.A. 60-3304(b), the facts of this case would support submission to the jury on claims against the Defendant Wild Oats on the issue of inadequate warning or instruction. The Cross-Claim Defendant Wally's Natural has made discovery disclosures of written warnings and instructions which it

apparently prepared and promulgated for users of its ear candles. Such instructions and warnings, which were marked as Exhibit A at Plaintiff's deposition, contain specific warnings and instructions including instructions to keep the head upright during use with the candle basically perpendicular to the ground, and at a slight upward angle. The instructions and warning also specifically direct the user never to burn the ear candle down to less than 4 inches in length. A reasonable inference exists that if the manufacturer of the ear candles promulgated written instructions and warnings, then such instructions and warnings were necessary for the safe use of the product.

The Plaintiff testified that the ear candles included no packaging or attached instructions (Danaher depo., pp. 84-85, p. 144), and that she never saw the instructions and warnings which are contained within Exhibit A prior to her deposition on February 24, 2010 (Danaher depo., p. 152). She consequently never gave them to the Defendant Kenney (Danaher depo., p. 105). Both the Plaintiff and the Defendant Kenney testified that the Plaintiff was not upright during the procedure, but instead was laying on the floor with one ear toward the floor and the ear candle in the other ear perpendicular to the ground (Danaher depo., p. 88, Kenney depo., p. 69). The Plaintiff also testified that, contrary to the written instructions, the Defendant Kenney allowed the candle to burn down to within 3 inches of the end (Danaher depo., p. 160, 182). From all of the above the jury could conclude that the manufacturer's written instructions and warnings were necessary for safe use of the ear candles and that the candles were defective without such warnings and instructions. This would be sufficient basis for submission of the case on the issue of inadequate warning and instruction under theories of negligence, implied warranty of merchantability and strict liability.

Further, there is ample evidence to support that the lack of instructions and warnings was the proximate cause of the injury. Since the Plaintiff did not experience the burn injury until the ear

candle was allowed to burn down to three inches, it is reasonable to infer that Plaintiff's injury would not have occurred if the procedure had been terminated when the ear candle reached four inches in accordance with the manufacturer's recommendations.

### Innocent Seller K.S.A. 60-3306

The Defendant Wild Oaths has not met its burden to show that it is entitled to immunity under the "innocent seller" law for several reasons.

First, their claim that the Plaintiff hasn't identified a specific defect and therefore they can't have known of such defect is without merit. In Stille v. AM International, 850 F. Supp. 960 (1994) the court rejected the notion that a seller can establish lack of knowledge about a defect simply by alleging that no defect existed. To fairly meet the substance of Plaintiff's claimed defect the seller in this case would have to assert that it did not know that the ear candles it sold had no medical benefit, did not know they carried a risk of serious injury from hot wax of which the user was unaware, did not know the ear candles required written warnings or instructions prepared by the manufacturer, and did not know the ear candles were considered adulterated, misbranded and dangerous products under Federal law and FDA interpretation of Federal law. The Defendant's motion does not even allege that they were unaware of these matters when they sold the ear candles to Plaintiff.

Even if Margot Roth's affidavit were shown to be based upon personal knowledge, it would establish only that the Defendant Wild Oats did not have actual knowledge of other claims or injuries involving ear candles. This evidence standing alone would not show that the conditions of K.S.A. 60-3306(a) have been proven.

The Defendant also fails to establish or even allege that they have met the conditions

contained in K.S.A. 60-3306(b), i.e., that they could not have discovered that ear candles are not medically effective, that they present a risk of serious injury due to dripping wax, that they have not be approved by the FDA as required by Federal law and that they require written instructions and warnings which were promulgated by the manufacturer. The trier-of-fact could certainly conclude that in meeting their duties under Kansas law as a seller of products to design, inspect, test and warn, the Defendant Wild Oats could have discovered these characteristics.

### Standard of Care of Seller of Products

The Defendant Wild Oats complains that the Plaintiff's expert did not establish what a product seller's standard of care is. This is nonsensical. A product seller's duty is determined by Kansas law.

A product seller has a duty to use ordinary care under the circumstances. <u>Timsah v. General Motors</u>, 225 Kan. 305 (1979). A product seller has a duty to make reasonable inspections for defect of a product manufactured by another. <u>Kitchener v. Williams</u>, 171 Kan.540, 554 (1951). A product seller has a duty to make such tests for defects in products manufactured by another as a reasonably necessary to assure the safety of the products sold. <u>Cunningham v. Subaru of America</u>, 684 F. Supp. 1567 (D. Kan. 1988). A product seller has a duty to warn customer of the dangerous nature of a product. <u>Jones v. Hittle Service, Inc.</u>, 219 Kan. 627 (1976). A product seller also has a duty to give complete instructions as to its safe use. <u>House v. Wichita Gas Co.</u>, 137 Kan. 332 (1933).

### Implied Warranty

The Defendant Wild Oats suggests that the Plaintiff's claims based upon implied warranty are insufficient because the Plaintiff cannot show that Plaintiff was buying the ear candles for a particular purpose or that Plaintiff relied on the Defendant's skill and judgment to select a suitable

ear candle.  This position ignores the implied warranty of merchantability.

A buyer can establish a breach of the implied warranty of merchantability by showing the goods were unfit for the ordinary purposes for which the goods were sold.  See Miller v. Lee Apparel Co., 19 Kan. App. 2d 1015 (1994).  Establishing a breach of the implied warranty of merchantability does not require a showing that a product was bought for a particular purpose, nor does it require a showing of reliance upon the seller's skill and judgment in selecting the product.  See Addis v. Bernardin, Inc., 226 Kan. 241 (1979).   If in the present case the jury finds that ear candles are not fit for the ordinary purposes for which such goods are sold, then fitness for a particular purpose or reliance on the seller's skill and judgment are irrelevant.

### Statute of Limitations on Implied Warranty Claim

The Defendant Wild Oats asserts that Plaintiff's implied warranty claim is barred by the four year statute of limitations contained within K.S.A. 84-2-725(l) because the claim allegedly accrued when Plaintiff bought the ear candles, citing K.S.A. 84-2-725(2).

This argument is wrong and misstates Kansas law.  A product liability action for personal injuries brought under theories of negligence, implied warranty or strict liability has a two year statute of limitation which accrues from the time of Plaintiff's injury.  See Kennedy v. City of Sawyer, 228 Kan. 439 (1980) and Thomas v. Henrich Equipment Corp., 563 F. Supp. 152 (1983).

### Punitive Damages

The question of whether a conduct is wanton is normally a question for the jury.  See Gruhin v. City of Overland Park, 17 Kan. App. 2d 388 (1992).  It is not necessary to a finding of wantonness that the Defendant be shown to have intended injury.  See Reeves v. Carlson, 266 Kan. 310 (1998).  Further, a defendant's realization of imminent danger can be shown with circumstantial evidence.

See <u>Lanning v. Anderson</u>, 22 Kan. App. 2d 474 (1996).

There is ample evidence upon which a jury could conclude that the Defendant Wild Oats recklessly disregarded an obvious risk of imminent harm and thereby acted wantonly in the sale of ear candles.  Given that Defendant chose to sell a product intended to be placed in the human ear and set afire, it is chargeable with knowing that such a product could very likely result in injury if it was not designed and tested properly or if the customer did not receive proper warnings and instructions.  If in the face of such knowledge, the Defendant Wild Oats made no effort to inspect the ear candles it sold, no effort to test the ear candles it sold, no effort to determine that the ear candles had been tested by anyone else for safety and no effort to determine what instructions or warnings would be necessary, these facts would support a conclusion that Defendant acted with reckless disregard to the safety of its customers.  Considering further the facts which support a conclusion that Defendant Wild Oats failed to pass on to Plaintiff the actual written instructions and safety warnings for the ear candles which had been promulgated by the manufacturer, the potential for a finding of wantonness is even more apparent.

**Conclusion**

The Defendant Wild Oats' motion for summary judgment should be overruled in all respects.

s/   John G. O'Connor
John G. O'Connor
Attorney for Plaintiff
Ks. Sup. Ct. No. 10362
827 Armstrong Avenue
Kansas City, Kansas 66101
Ph: (913) 321-9600
Fax: (913) 321-0199

## CERTIFICATE OF MAILING

      I hereby certify that a true and correct copy of the above and foregoing Plaintiff's Response and Memorandum of Law in Opposition to Defendant Wild Oats Markets' Motion for Summary Judgment was deposited in the U.S. Mail, postage prepaid, to Mr. Jeffrey R. Siegel, Frischer & Associates, Chtd., Southcreek Building XIV, 13220 Metcalf, Suite 100, Overland Park, KS 66213, jsiegel@frislaw.com, Mr. Derrick A. Pearce, Wallace, Saunders, Austin, Brown and Enochs, Chtd., 10111 W. 87th St., Overland Park, KS 66282-2290, dap@wallacesaunders.com, and to Mr. Joseph D. Ryan, Law Offices of Joseph D. Ryan, P.C., 1896 Sheridan Road, Highland Park, IL 60035, jryan@ryanlawoffices.com, this 9th day of September, 2010.

                                                              s/ John G. O'Connor
                                                               John G. O'Connor, #10362
                                                               Attorney for Plaintiff