**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| ANNE F. DANAHER, | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 08-2293-DJW |
| WILD OATS MARKETS, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendant Wild Oats Markets, Inc.'s Motion for Summary Judgment and Memorandum in Support of its Motion for Summary Judgment (ECF No. 133). Defendant and Cross-Claim Plaintiff Wild Oats Markets, Inc. ("Wild Oats") asks the Court to enter summary judgment in its favor on all of Plaintiff's product liability claims based on negligence, gross negligence, strict liability, and breach of implied warranty.

Also pending before the Court is Cross-Claim Defendants Wally's Natural Products, Inc.'s and United Natural Foods, Inc.'s Motion and Memorandum in Support of Their Motion for Summary Judgment (ECF No. 131). Cross-Claim Defendants Wally's Natural Products, Inc. ("Wally's") and United Natural Foods, Inc. ("United") ask the Court to enter summary judgment in their favor on Wild Oats' claims for indemnification against them.

For the reasons explained below, the Court will consider the summary judgment motions, and Plaintiff's responses thereto, together.

## I.    BACKGROUND

This is a negligence/product liability action in which Plaintiff alleges that she sustained an injury to her ear while using an ear candle. According to Plaintiff, she purchased two ear candles from Wild Oats and then hired Defendant Karen Kenney ("Kenney") to perform an ear candling

procedure utilizing the ear candles purchased from Wild Oats.  Plaintiff contends that during the ear candling procedure, which took place on June 30, 2006, she suffered a burn to her right inner ear, which caused damage to her ear and resulted in hearing loss.  Wild Oats has asserted cross-claims against Wally's (the alleged manufacturer of the ear candle) and United (the alleged distributor of the ear candle) for indemnification.[1]

Wally's and United move for summary judgment on Wild Oats' claims for indemnification against them.  They explain in their motion that if they can prove that Wild Oats is entitled to summary judgment on Plaintiff's claims against Wild Oats, then they are entitled to summary judgment on Wild Oats' claims for indemnification against them.  Wally's and United thus devote all of their summary judgment motion to arguing that Wild Oats is entitled to summary judgment on Plaintiff's claims against Wild Oats.  A review of the two motions for summary judgment reveals that they are very similar, in both the lists of allegedly uncontroverted facts as well as their arguments.  Plaintiff noted these similarities in her response to Wild Oats' motion for summary judgment: "The issues raised by [Wild Oats'] motion are largely identical to those raised by Cross-Claim Defendants Wally's Natural Products and United Natural Foods, and Plaintiff would therefore adopt and incorporate her response to that motion."[2]

---

[1] The Court recently entered its Memorandum & Order (ECF No. 150) granting in part and denying in part the motion for judgment on the pleadings on Wild Oats' cross-claims for indemnification filed by Wally's and United.  The Court granted the motion with respect to Wild Oats' cross-claim for comparative implied indemnity, but denied it with respect to its cross-claim for implied contractual indemnity.  Thus, Wild Oats still has a claim for indemnification pending against Wally's and United.

[2] Pl.'s Resp. & Mem. of Law in Opp'n to Def. Wild Oats Markets' Mot. for Summ. J. (ECF No. 135) at 6-7.

Given the significant similarities, both in the alleged material, uncontroverted facts and in the arguments, between the motions for summary judgment filed by Wild Oats and Wally's and United, and given that Plaintiff incorporated her responses to the motions, the Court finds it appropriate to consider the two motions together.  The Court will refer to Wild Oats, Wally's and United collectively as "the moving parties."

## II.    SUMMARY JUDGMENT STANDARD[3]

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law."[4]  In applying this standard, the court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party.[5]  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6]  "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."[7]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be

---

[3] The Court notes that the current version of Fed. R. Civ. P. 56 became effective December 1, 2010.  However, because the motions for summary judgment were filed before December 1, 2010, the Court will refer to and apply the rule as it existed at the time the motions were filed.

[4] Fed. R. Civ. P. 56(c)(2).

[5] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hirase-Doi v. U.S. West Commc'ns, Inc.*, 61 F.3d 777, 781 (10th Cir. 1995)).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Id.* (citing *Anderson*, 477 U.S. at 248).

viewed in the light most favorable to the nonmoving party[8] and that it may not make credibility determinations or weigh the evidence.[9]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[10]  In attempting to meet that standard, a moving party that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the moving party need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[11]  In such cases, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[12]

If the moving party carries this initial burden, then the nonmovant that would bear the burden of persuasion at trial may not simply "rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof."[13]  To accomplish this, "sufficient evidence [] pertinent to the material issue [] must

---

[8] *Matsushita*, 475 U.S. at 587.

[9] *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (citations omitted).

[10] *Matsushita*, 475 U.S. at 587 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[11] *Id.* (citing *Celotex*, 477 U.S. at 325).

[12] *Celotex*, 477 U.S. at 323.

[13] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

4

be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[14]

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

Because jurisdiction over this matter is based on diversity of citizenship between the parties, the court will apply the substantive law of the forum state.[16]   The parties agree that Kansas law governs this dispute.  Thus, in resolving the motions for summary judgment, the Court will apply Kansas law.

## III.   EVIDENTIARY ISSUES

The parties raise several evidentiary issues in their briefing on the summary judgment motions.  These issues concern the Affidavit of Margot Roth, and two letters that appear to be from the Food and Drug Administration ("FDA"), one dated November 18, 1998, and the other dated February 17, 2010.  The Court will address each of these issues below.

### A.   Affidavit of Margot Roth

In support of their motions for summary judgment, the moving parties rely on the Affidavit of Margot Roth (the "Roth Affidavit").  The Roth Affidavit provides, in pertinent part:

The affiant, Margot Roth, being duly sworn upon oath, states and deposes as follows:

---

[14] *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002) (citations and quotations omitted).

[15] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1) (quotations omitted).

[16] *Thom*, 353 F.3d at 851 (citations omitted).

5

1.      If called as a witness, I could competently testify to the matters set forth in this affidavit.

2.      I am Global Director of Risk Management for the subsidiaries of Whole Foods Market, Inc., including but not limited to, Wild Oats Markets, Inc. (hereinafter "Wild Oats").

3.      I have been the Global Director of Risk Management for approximately ten years.

4.      In my duties as the Global Director of Risk Management, I am responsible for and participated in the review of claims involving Wild Oats.

Ms. Roth then goes on to make claims that Wild Oats lacked knowledge of any defect of the ear candle and that Wild Oats did not design or manufacture the ear candle that injured Plaintiff.

Under Fed. R. Civ. P. 56(e), "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."[17] Plaintiff argues that the Roth Affidavit relied upon by the moving parties is not admissible because it is not based on personal knowledge. According to Plaintiff, Ms. Roth is the Global Director of Risk Management for Whole Foods Market, Inc., which is a successor entity to Wild Oats. Plaintiff claims that Wild Oats was not acquired by Ms. Roth's employer, Whole Foods Market, Inc., until 2007, which was four years after Wild Oats sold the ear candle to Plaintiff. Plaintiff thus argues that the Roth Affidavit does not demonstrate that it is based on Ms. Roth's personal knowledge.

The moving parties do not defend Plaintiff's allegations. Instead, they state that the Roth Affidavit speaks for itself and defends itself and therefore nothing else needs to be added in defense of the Roth Affidavit.

---

[17] Fed. R. Civ. P. 56(e)(1).

The Court has considered the Roth Affidavit and concludes that, on its face, it is not shown to be based on personal knowledge. Indeed, nothing in the Roth Affidavit claims that it is based on personal knowledge. Rather, Ms. Roth simply averred that if called as a witness, she would "competently testify" to the matters set forth in the Roth Affidavit. This does not equate to a declaration that the Roth Affidavit is based on personal knowledge. In addition, the Roth Affidavit does not explain how it is that Ms. Roth has personal knowledge of the matters sworn to in the affidavit. In short, the Roth Affidavit does not provide sufficient information which would allow the Court to conclude that it is based on personal knowledge. Consequently, the Court concludes that the Roth Affidavit does not satisfy the Rule 56(e) requirements, and the Court will not consider the Roth Affidavit in support of Plaintiff's oppositions to the motions for summary judgment. In so concluding, the Court need not determine whether Plaintiff's allegations concerning the acquisition of Wild Oats in 2007 by Whole Foods Market, Inc. are true.[18]

**B.      The Letters**

Plaintiff relies on two letters in support of her oppositions to the motions for summary judgment, both of which appear to be from the FDA. The first is dated November 18, 1998, and is addressed to John Fisher, the apparent owner of Nature's Way. The second letter is dated February 17, 2010, and is addressed to Terese Sheppard, the apparent president of Wally's. Both letters concern the manufacturing of ear candles. It appears that Plaintiff obtained both letters via the

---

[18] The moving parties rely solely on the Roth Affidavit to support their claim that Wild Oats is an "innocent seller" and therefore is entitled to summary judgment on Plaintiff's product liability claims under K.S.A. § 60-3306. Without the Roth Affidavit, the moving parties have no evidence in the summary judgment record to support their claim that Wild Oats is entitled to the protection provided for under K.S.A. § 60-3306. The Court therefore concludes that the moving parties are not entitled to summary judgment based on K.S.A. § 60-3306.

Internet, and she seeks to rely on them as evidence that the general product category of ear candles are defective.  The letters are not sealed or certified, and Plaintiff does not offer any affidavit or other document supporting the authenticity of the letters.  Instead, Plaintiff claims she "has been unable, within the 21 days allotted for responding to [the summary judgment motions], to obtain affidavits or depositions from officials of the Food and Drug Administration to confirm the information contained in" the letters.[19]  Plaintiff asks that, if the moving parties challenge the letters, the Court deny the summary judgment motions under Fed. R. Civ. P. 56(f) "until Plaintiff has had the opportunity to obtain such affidavits or depositions."[20]

The moving parties argue that the Court should not consider the letters for several reasons. The moving parties point out that the letters were never produced by Plaintiff during the discovery period, or at any other time before to responding to the motions for summary judgment, and therefore the letters should not now be considered by the Court.  In addition, the moving parties argue that the letters should not be considered because they are uncertified, unauthenticated, and unsupported by sworn testimony, and thus they are inadmissible.  The Court will address each of these arguments in turn.

### 1. Prior Disclosure

Under Fed. R. Civ. P. 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

---

[19] Pl.'s Resp. & Mem. of Law in Opp'n to Def. Wild Oats Markets' Mot. for Summ. J. (ECF No. 135) at 3; Pl.'s Resp. & Mem. of Law in Opp'n to Mot. for Summ. J. Filed by Cross-Claim Defs. Wally's Natural Products and United Natural Foods (ECF No. 137) at 4.

[20] Pl.'s Resp. & Mem. of Law in Opp'n to Def. Wild Oats Markets' Mot. for Summ. J. (ECF No. 135) at 4; Pl.'s Resp. & Mem. of Law in Opp'n to Mot. for Summ. J. Filed by Cross-Claim Defs. Wally's Natural Products and United Natural Foods (ECF No. 137) at 4.

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[21]   The moving parties point out, and Plaintiff does not claim otherwise, that these letters were never produced during the discovery period, which closed August 5, 2010.  It appears that the first time Plaintiff made the moving parties aware of these letters, and that she intended to rely on these letters, was when she filed her oppositions to their respective motions for summary judgment.  Plaintiff makes no attempt to explain why she never disclosed these letters before filing her oppositions to the motions for summary judgment.  As such, Plaintiff has not shown that her failure to disclose these letters before the close of discovery is substantially justified or is harmless.

In light of these circumstances, the Court holds that Plaintiff is not allowed to rely on the letters in support of her oppositions to the motions for summary judgment.  Consequently, the Court will not consider these letters in ruling on the motions for summary judgment.

### 2.    *Admissibility*

Even if the Court did not exclude the letters under Rule 37(c)(1), the Court finds that the letters should not be considered because they were not properly authenticated and therefore are inadmissible.  Under Fed. R. Evid. 901, the letters must be authenticated before the Court can consider them in support of Plaintiff's oppositions to the motions for summary judgment.  Rule 901 provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[22]   The moving parties challenge the authenticity of the letters, pointing out that there is no evidence that the letters are in fact official letters from the FDA concerning the

---

[21] Fed. R. Civ. P. 37(c)(1).

[22] Fed. R. Evid. 901(a).

manufacturing of ear candles.

> Unauthenticated documents, once challenged, cannot be considered by a court in determining a summary judgment motion.  In order for documents not yet part of the court record to be considered by a court in support of or in opposition to a summary judgment motion they must meet a two-prong test: (1) the document must be attached to and authenticated by an affidavit which conforms to rule 56(e); and (2) the affiant must be a competent witness through whom the document can be received into evidence. . . .   Documentary evidence for which a proper foundation has not been laid cannot support a summary judgment motion, even if the documents in question are highly probative of a central and essential issue in the case.[23]

Plaintiff has not satisfied the first prong of this test because she has not offered any affidavit to authenticate the letters.  In addition, there is no evidence that these letters, which purport to be from the FDA and signed by FDA officials, are what Plaintiff claims they are, namely, official letters from the FDA concerning its position on the manufacturing of ear candles.  Furthermore, the letters are not self-authenticating documents under Fed. R. Evid. 902 – they are not under seal (see Fed. R. Evid. 902(1)), there is no certification under seal from the appropriate FDA official that the individuals who signed the letters had the capacity to sign the letters or that the signatures are genuine (see Fed. R. Evid. 902(2)), and the letters are not certified (see Fed. R. Evid. 902(4)).  The Court thus concludes that the letters were not properly authenticated, and are therefore inadmissible.  Consequently, the Court will not consider the letters in support of Plaintiff's oppositions to the motions for summary judgment, regardless of how probative they may be of a central issue in this case.

### 3.     Plaintiff's Rule 56(f) Request

At the time the motions were filed, Rule 56(f) provided as follows, "[i]f a party opposing the

---

[23] *Bell v. City of Topeka, Kan.*, 496 F.Supp.2d 1182, 1184-85 (D. Kan. 2007) (citations omitted).

[summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . deny the motion [or] order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken."[24] Plaintiff asks the Court to deny the motions for summary judgment under Rule 56(f) and give Plaintiff the opportunity to obtain the affidavits and depositions necessary to provide the proper foundation for the letters.

"The central tenet of Rule 56(f) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."[25]   The court has wide discretion when ruling on a Rule 56(f) motion.[26]   "A party seeking to defer a ruling on summary judgment under Rule 56(f) must file an affidavit that explains why facts precluding summary judgment cannot be presented."[27]   The rule is not "invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable."[28]

Plaintiff has not provided the Court with the affidavit required under Rule 56(f).[29]   In

---

[24] Fed. R. Civ. P. 56(f).  Effective December 1, 2010, former Rule 56(f), with some minor stylistic changes, has been incorporated into Rule 56(d).

[25] *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1264 (10th Cir. 2006) (quotations and citations omitted).

[26] *Id.* at 1263.

[27] *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) (citations and quotations omitted).

[28] *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir.1986).

[29] *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) ("A prerequisite to granting relief [under Rule 56(f)], . . . is an affidavit furnished by the nonmovant.") (citations omitted).

addition, Plaintiff has not attempted to explain why she was unable to obtain these letters and the affidavit or testimony needed to authenticate these letters within the discovery period, which did not close until August 5, 2010. The Court will therefore deny Plaintiff's request that the Court deny the motions for summary judgment under Rule 56(f).[30]

## IV.   FACTS

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to Plaintiff, the nonmovant.[31]

Plaintiff brought this products liability action against Wild Oats after sustaining an injury to her right ear while using an ear candle purchased from Wild Oats. Plaintiff purchased the ear candle from Wild Oats on June 28, 2003. While at the Wild Oats store, Plaintiff asked an employee of Wild Oats whether Wild Oats sold ear candles. The employee informed Plaintiff that Wild Oats did sell ear candles, and walked with Plaintiff to the area of the store where the ear candles were on

---

[30] *See Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1124-25 (10th Cir. 2008) ("Where a party opposing summary judgment . . . fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate."); *Comm. for First Amendment*, 962 F.2d at 1522 (an unverified assertion by counsel in a memorandum opposing summary judgment does not comply with Rule 56(f) and results in a waiver).

[31] The Court will not consider facts not supported by the record. This includes facts that Plaintiff attempts to support with the opinions of Dr. Richard Wiet, Plaintiff's expert. After the motions for summary judgment were fully briefed, the Court entered its Memorandum & Order (ECF No. 149) granting the motions seeking to exclude Dr. Wiet's opinions on ear candles. The Court concluded that Dr. Wiet is not a qualified expert with respect to ear candles and ear candling, and thus excluded his opinions that ear candles are of no use or benefit in the treatment of any condition or illness involving the human ear, are unreasonably dangerous products because of the potential for damage to the structure of the middle ear associated with their use, and are not reasonably safe for the use apparently intended by the manufacturers and sellers of such products because of the potential damage to the structures of the middle ear associated with their use.

display.  There was no other dialogue, conversation, or other information provided to Plaintiff by Wild Oats or any employee or agent of Wild Oats.  Plaintiff then selected the ear candle from Wild Oats without any involvement or assistance from a Wild Oats' employee.  Plaintiff never mentioned to an employee of Wild Oats the purpose for which she was buying the ear candle.  In addition, an employee of Wild Oats did not make any statements regarding the quality of the ear candle, what the ear candle could or could not do, or any statements that were deemed by Plaintiff to be some type of warranty.

In 2006, after possessing the unused ear candle for approximately three years, Plaintiff was having discomfort in her right ear, which she attributed to water on the ear.  Plaintiff called the Wild Oats store where the ear candle was purchased in 2003 and asked if they could recommend someone to perform the ear candling procedure.  Plaintiff was told that Wild Oats no longer carried ear candles and she was referred to another health food store, The Herb Garden.  When Plaintiff called The Herb Garden, she was referred to the owner's daughter, Kenney, for the ear candling procedure.

Plaintiff called Kenney and made an appointment for the ear candling procedure to be performed at Kenney's house.  Kenney charged Plaintiff $20.00 to perform the ear candling procedure, which was paid in advance.  Plaintiff's understanding was that the ear candling procedure was intended to create suction or a siphon effect so that wax would come out of her ear.  Plaintiff did not understand that the ear candle had wax on the inside and did not believe the procedure would burn her ear.

Wally's disclosed during discovery that it has prepared and promulgated written warning instructions for its ear candles which direct the user to keep the head upright during use, with the candle positioned basically parallel to the floor.  The instructions further warn the user never to burn

13

the candle to less than four inches.  However, the ear candle purchased by Plaintiff at Wild Oats was kept at the Wild Oats store in a clear acrylic jar, and the ear candle had no packaging, markings, written instructions or warnings of which Plaintiff is aware.  Before performing the ear candling procedure, Kenney told Plaintiff that she was unfamiliar with the ear candle Plaintiff brought with her for the ear candling procedure, and that the ear candle appeared to have thicker wax on it than the ear candles Kenney was familiar with.

Kenney never saw the instructions promulgated by Wally's.  The only instruction or guidance which Kenney had received on how to perform an ear candling procedure came from (1) her mother, who owns The Herb Garden, (2) Mary Brown, an employee of The Herb Garden, and (3) review of an instruction pamphlet which is handed out at The Herb Garden.  Kenney does not know where her mother or The Herb Garden obtained the instruction pamphlet.  The instruction pamphlet is entitled "A History of Ear Candles" and is worded in the past tense.  The instruction pamphlet states that "reproductions of the ancient so-called ear candles are sold as novelty items only" and "make amusing birthday candles."  The instruction pamphlet further advises that manufacturers or sellers are not responsible for any accident or result of misuse.

Rather than performing the ear candling with Plaintiff's head upright and the ear candle basically parallel to the floor and slightly elevated, as depicted in the instructions prepared by Wally's, Kenney performed the ear candling procedure consistent with the instruction pamphlet she had obtained from The Herb Garden.  Kenney positioned Plaintiff on the floor with the left side of Plaintiff's face on a pillow, which meant that Plaintiff's head was in a horizontal position, and the ear candle was extending up, perpendicular to the floor.  Kenney placed the ear candle through a hole in a piece of cardboard, and then inserted one end of the candle into the Plaintiff's right ear

14

while Plaintiff laid on her left side. Kenney then lit the other end of the ear candle (which was separated from Plaintiff's ear by the cardboard). Kenney allowed the ear candle to burn down to within three inches of the tip, at which time Plaintiff felt hot wax roll into her ear and she told Kenney that she had burned Plaintiff's ear.

Plaintiff assumes that the heat from the flame of the ear candle melted a portion of the ear candle and that liquefied wax ran into her right ear causing her ear drum to burn. When asked whether her injury was caused by the acts or omissions of Kenney or the ear candle itself, Plaintiff stated, "In reality it was caused by Karen Kenney by how she allowed it to burn down and it started melting the wax and it rolled down into my ear." Plaintiff also testified that she never formed a "belief that the ear candle that was used was defective in some way."

## V.     DISCUSSION

Plaintiff asserts claims of strict liability, negligence and/or gross negligence, and breach of implied warranty against Wild Oats. Plaintiff also asserts that she is entitled to punitive damages. The moving parties argue that Wild Oats is entitled to summary judgment because (a) Plaintiff has not demonstrated that the ear candle was defective, (b) Plaintiff cannot establish the necessary elements to prevail on a claim for implied warranty of fitness for a particular purpose, (c) Plaintiff's breach of implied warranty claim is barred by the applicable statute of limitations, (d) Plaintiff's claim for gross negligence must fail because Kansas does not recognize such a claim, and Plaintiff cannot demonstrate that she is entitled to punitive damages, and (e) Plaintiff cannot prevail on her negligence claim because she did not establish, through her expert, the standard of care that Wild Oats allegedly breached. The Court will address each of these arguments below.

### A.     Has Plaintiff Demonstrated A Defect?

Under Kansas law, product liability claims are governed by the Kansas Products Liability Act, K.S.A. §§ 60-3301 *et seq.* ("KPLA"). The KPLA "applies to all product liability claims regardless of the substantive theory of recovery."[32] Thus, Plaintiff's negligence, strict liability, and implied warranty claims are all governed by the KPLA. The parties agree that, under Kansas law, to prevail on any of her claims under the KPLA, Plaintiff must prove that (1) the ear candle was defective, (2) the ear candle was defective at the time it left the defendant's possession or control, and (3) the defect must have caused the injury sustained by Plaintiff.[33] The moving parties argue that Plaintiff has not demonstrated that the ear candle was defective and therefore she cannot satisfy the first element of her product liability claims.

Kansas law recognizes three ways in which a product can be defective: "(1) a flaw is present in the product at the time it is sold; (2) the producer or assembler of the product fails to adequately warn of a risk or hazard related to the way the product was designed; or (3) the product, although perfectly manufactured, contains a defect that makes it unsafe."[34] Plaintiff makes three arguments as to why there is ample evidence from which a jury could conclude that the ear candle was defective.

Plaintiff first argues that all ear candles are defective, including the ear candle at issue in this case, because they are devices for which Federal law requires pre-market approval by the FDA and which approval has never been sought or granted. This argument, however, relies entirely on the

---

[32] *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 126 (1990).

[33] *See Lane v. Redman Mobile Homes, Inc.*, 5 Kan App.2d 729, Syl. ¶ 2 (1981).

[34] *Savina*, 247 Kan. at 114 (citations omitted).

FDA letters which the Court has already deemed inadmissible.  The Court is therefore not persuaded by Plaintiff's first argument.

Plaintiff also argues that there is sufficient evidence to support a conclusion that the ear candle was defective because of the testimony and opinions provided by her expert, Dr. Wiet. However, as previously noted, soon after the motions for summary judgment were fully briefed, the Court granted the motions seeking to exclude Dr. Wiet's opinions concerning ear candles. Consequently, the Court is not persuaded by Plaintiff's second argument.

Lastly, Plaintiff argues that there is enough evidence from which a jury could conclude that the ear candle was defective due to the lack of warnings or instructions.  Under Kansas law, "[i]t is generally understood that the duty to warn encompasses two separate duties; the duty to provide a warning to dangers inherent in use and the duty to provide adequate instructions for safe use."[35]  It is undisputed that, during the discovery process, Wally's, the alleged manufacturer of the ear candle, disclosed written warnings and instructions which Wally's prepared and promulgated for use of its ear candles.  These instructions and warnings contain specific warnings and instructions directing the user to keep the head upright during the ear candling procedure, with the ear candle basically parallel to the ground and at a slightly upward angle.  These instructions and warnings also specifically direct the user to never burn the ear candle down to less than four inches in length.

It is also undisputed that the ear candle used by Plaintiff included no packaging or attached instructions, and that Plaintiff and Kenney never saw the instructions produced by Wally's during discovery before the ear candle procedure was performed.  Contrary to the written instructions produced by Wally's during discovery, Kenney did not position Plaintiff upright, but had Plaintiff

---

[35] *Delaney v. Deere and Co.*, 268 Kan. 769, 778 (2000) (citations omitted).

lie down on the floor with the ear candle perpendicular to the floor.  In addition, contrary to the written instructions produced by Wally's during discovery, Kenney allowed the ear candle to burn down to within three inches of the end.  Plaintiff argues that because she did not experience a burn until the ear candle was allowed to burn down to within three inches of the end, there is sufficient evidence from which a jury could conclude that the lack of warning was the proximate cause of Plaintiff's injuries.

The moving parties do not respond to Plaintiff's argument that the ear candle was defective due to the lack of adequate warnings or instructions.  Even if they had responded, the Court finds that Plaintiff has demonstrated that there is sufficient evidence from which a jury could conclude that the ear candle was defective based on a warning defect.  The Court therefore concludes that the moving parties have not demonstrated that Wild Oats is entitled to summary judgment based on this argument.  The Court thus turns to the moving parties' second argument in support of their motions for summary judgment.

### B.    Breach of Implied Warranty

The moving parties argue that Wild Oats should be granted summary judgment on Plaintiff's claim for breach of implied warranty. The moving parties argue that Plaintiff has asserted a claim against Wild Oats for breach of implied warranty of fitness for a particular purpose, and that Plaintiff cannot demonstrate the necessary elements to prevail on such a claim.  Plaintiff, however, argues that she has not simply asserted a claim for breach of implied warranty of fitness for a particular purpose, but that she has also asserted a claim for breach of implied warranty of merchantability. The Court turns to the Pretrial Order (ECF No. 128), which supersedes all pleadings and controls

the subsequent course of this action, to determine exactly what claims Plaintiff asserts against Wild Oats.

In the Pretrial Order, Plaintiff identifies the relevant theory of recovery simply as a "breach of implied warranty against Wild Oats" without specifying whether she is claiming a breach of implied warranty of fitness for a particular purpose, or a breach of implied warranty of merchantability. However, Plaintiff then listed the essential elements for her breach of implied warranty claim, stating that in order to prevail on her claim, she would have to prove the following:

(1)    That Wild Oats had reason to know at the time of selling the ear candle to the plaintiff the *particular purpose* for which the ear candle was being purchased;

(2)    That the plaintiff *relied upon Wild Oats' skill or judgment* to select or furnish a suitable product for that purpose;

(3)    That by selling the ear candle to the plaintiff Wild Oats warranted that it was fit for the *particular purpose* for which plaintiff had purchased it;

(4)    That the ear candle was not fit for the *particular purpose* for which plaintiff purchased it; [and]

(5)    That as a direct and proximate result of Wild Oats' breach of warranty, plaintiff sustained damages.[36]

These elements identified by Plaintiff are not the elements for a claim of breach of implied warranty of merchantability, but rather are the elements for a claim of breach of implied warranty of fitness for a particular purpose.

In Kansas, an implied warranty of fitness for a particular purpose is defined as follows:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified

---

[36] Pretrial Order (ECF No. 128) at 12 (emphasis added).

under the next section an implied warranty that the goods shall be fit for such purpose.[37]

For this warranty to arise, "(1) the seller must have reason to know of the buyer's particular purpose for the goods; (2) the buyer must rely on the seller's expertise in furnishing goods suitable for the buyer's purpose; and (3) the seller must have reason to know of the buyer's reliance."[38]

A breach of implied warranty of merchantability differs from a breach of implied warranty of fitness for a particular purpose. In *International Petroleum Services, Inc. v. S & N Well Service, Inc.*,[39] the Supreme Court of Kansas explained, "The provisions of K.S.A. 84-2-315, covering the warranty of fitness for a *particular purpose*, are frequently confused with the implied warranty of merchantability which covers fitness for *ordinary purposes*. The warranty of fitness for a particular purpose is narrower, more specific, and more precise."[40] The court further explained, "When goods are acquired for the ordinary purposes for which such goods are generally used, no implied warranty of fitness for a particular purpose arises. A use for ordinary purposes falls within the concept of merchantability."[41]

In the Pretrial Order, Plaintiff does not mention the "ordinary purpose" of the ear candle, but instead refers to the "particular purpose" of the ear candle, claiming that Wild Oats had reason to know at the time of selling the ear candle to Plaintiff the particular purpose for which the ear candle

---

[37] K.S.A. § 84-2-315.

[38] *Lohmann & Rauscher, Inc. v. YKK (U.S.A.) Inc.*, 477 F.Supp.2d 1147, 1155 (D. Kan. 2007) (quoting K.S.A. § 84-2-315 cmt. 2).

[39] 230 Kan. 452 (1982)

[40] *Id.* at 461 (citations omitted) (emphasis added).

[41] *Id.*

was being purchased and that Plaintiff relied on Wild Oats' skill and judgment to select or furnish a suitable ear candle. Based on Plaintiff's allegations in the Pretrial Order, the Court concludes that she has asserted a claim for breach of implied warranty of fitness for a particular purpose against Wild Oats. The Court thus turns to the moving parties' argument that Plaintiff cannot prevail on such a claim.

As discussed above, in order to prevail on a claim for breach of implied warranty of fitness for a particular purpose, Plaintiff must demonstrate (1) that Wild Oats had reason to know of Plaintiff's particular purpose for the ear candle, (2) that Plaintiff relied on Wild Oats' expertise in furnishing an ear candle suitable for that particular purpose, and (3) that Wild Oats had reason to know of Plaintiff's reliance.[42] It appears to the Court that reasonable minds could differ as to whether Plaintiff has established a claim for breach of implied warranty of fitness for a particular purpose. Reasonable minds could differ as to what the ordinary purpose of an ear candle is and whether Plaintiff used it for its ordinary purpose or for a particular purpose. Reasonable minds could also differ as to whether Plaintiff relief on Wild Oats' skill and judgment in furnishing the ear candle for her particular purpose, and whether Wild Oats had reason to know of Plaintiff's reliance. The Court therefore concludes that the moving parties have not demonstrated that Wild Oats is entitled to summary judgment based on this argument. The Court thus turns to the moving parties' third argument in support of their motions for summary judgment.

## C.      Statute of Limitations for Breach of Implied Warranty

The moving parties also argue that Plaintiff's breach of implied warranty claim must fail because it is barred by the applicable statute of limitations. They argue that a breach of implied

---

[42] *See Lohmann & Rauscher*, 477 F.Supp.2d at 1155.

warranty involving the sale of goods must be commenced within four years after the cause of action has accrued, and that the cause of action accrued upon the tender of delivery of the goods. The moving parties therefore argue that because Plaintiff purchased the ear candle in 2003, the statute of limitations on her breach of implied warranty claim ran in 2007. Plaintiff did not commence this action until 2008. The moving parties thus argue that Plaintiff's breach of implied warranty claim is barred by the statute of limitations. The Court does not agree.

A review of the relevant Kansas law makes it clear that the applicable statute of limitations for Plaintiff's breach of implied warranty claim is the two-year statute of limitations for product liability claims set forth in K.S.A. § 60-513, which accrues at the time of injury.[43] Plaintiff's injury occurred June 30, 2006, and she commenced this suit on June 27, 2008, within the applicable statute of limitations period. The Court therefore concludes that the moving parties have not demonstrated that Wild Oats is entitled to summary judgment based on this argument. The Court thus turns to the moving parties' fourth argument in support of their motions for summary judgment.

### D.    Gross Negligence and Punitive Damages

The moving parties argue that Plaintiff's claim for gross negligence must fail because Kansas does not recognize such a claim. The moving parties are correct that Kansas does not recognize a separate claim for "gross negligence." "Kansas does not recognize degrees of negligence and, thus, has no category for 'gross negligence.'"[44] Instead, Kansas "draws a distinction between ordinary

---

[43] *Fennesy v. LBI Mgmt., Inc.*, 18 Kan.App.2d 61, 65-66 (1993); *Thomas v. Heinrich Equip. Corp.*, 563 F.Supp. 152, 156 (D. Kan. 1983) (citing *Kennedy v. City of Sawyer*, 228 Kan. 439 (1980)).

[44] *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 772 (1999).

negligence and wanton conduct, which is defined as the reckless disregard for the rights of others with a total indifference to the consequences."[45]  Plaintiff, therefore, may not pursue a separate claim for "gross negligence" against Wild Oats.  The Court will therefore grant the motions for summary judgment to the extent they seek summary judgment on Plaintiff's separate claim for gross negligence against Wild Oats.

Plaintiff may, however, pursue a claim for punitive damages based upon Wild Oats' alleged wanton conduct, which she has done.  The moving parties acknowledge that Plaintiff may pursue a claim for punitive damages, but they argue that Wild Oats is entitled to summary judgment on this claim because Plaintiff cannot demonstrate, by clear and convincing evidence, that Wild Oats acted toward Plaintiff with wanton conduct.

Under Kansas law, "[i]n any civil action where claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice."[46]  "[T]o establish wanton or reckless conduct, there must be evidence to establish a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences."[47]  The determination that conduct is wanton is typically a question

---

[45] *Id.*

[46] K.S.A. § 60-3701(c).

[47] *Willard v. City of Kansas City*, 235 Kan. 655, 658 (1984) (quotations and citations omitted).

of fact for the jury.[48]  "Only when reasonable persons could not reach differing conclusions from the same evidence may the issue [of wantonness] be decided as a question of law."[49]

Plaintiff argues that there is sufficient evidence from which a jury could conclude that Wild Oats realized an imminent danger and recklessly disregarded that danger.  Plaintiff argues the evidence shows that Wild Oats chose to sell a product intended to be placed in the human ear and set afire, and thus Wild Oats is chargeable with knowing that such a product could very likely result in injury if the customer was not provided with proper warnings and instructions.  Plaintiff further argues that despite this danger, Wild Oats sold the ear candle without any instructions or warnings necessary to protect the customer.  Plaintiff therefore argues that a jury could conclude based on this evidence that Wild Oats acted with reckless disregard to an imminent danger posed to its customers.

It appears to the Court that reasonable persons could reach different conclusions on whether Wild Oats' conduct constituted wanton conduct.  The Court therefore concludes that the issue of whether Wild Oats' conduct was willful and wanton should be determined by the jury.  Consequently, the Court holds that although Plaintiff may not pursue a separate claim for "gross negligence," Plaintiff may pursue her claim for punitive damages against Wild Oats based on Wild Oats' alleged wanton conduct.

### E.   Negligence and the Standard of Care

The moving parties argue that Wild Oats is entitled to summary judgment on Plaintiff's negligence claim because she did not establish through her expert, Dr. Wiet, the standard of care that Wild Oats allegedly breached.  The Court is not at all persuaded by this argument.  Although expert

---

[48] *Gruhin v. City of Overland Park*, 17 Kan.App.2d 388, 392 (1992) (citations omitted).

[49] *Id.* (citations omitted).

testimony is typically required to establish the standard of care in cases involving professional actions and whether the professional deviated from the standard of case,[50] Plaintiff has not asserted a professional negligence action against Wild Oats.  Rather, Plaintiff has asserted a claim for ordinary negligence and, as Plaintiff points out, the standard of care of a product seller is determined by Kansas law.  Thus, Plaintiff did not need to provide expert testimony to establish this standard of care.  The Court therefore concludes that the moving parties have not demonstrated that Wild Oats is entitled to summary judgment based on this argument.

## VI.   CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part the motions for summary judgment.  The motions for summary judgment are granted only to the extent they seek summary judgment on Plaintiff's separate claim for gross negligence against Wild Oats.  Plaintiff may, however, pursue her claim for punitive damages against Wild Oats based on Wild Oats' alleged wanton conduct.

**IT IS THEREFORE ORDERED** that Defendant Wild Oats Markets, Inc.'s Motion for Summary Judgment and Memorandum in Support of its Motion for Summary Judgment (ECF No. 133) is granted in part and denied in part.

---

[50] *Moore v. Associated Material & Supply Co.*, 263 Kan. 226, 234-35 (1997) ("when plaintiffs are attempting to establish negligence based upon a departure from the reasonable standard of care in a particular profession, expert testimony is required to establish such a departure"); *Bi-State Dev. Co. v. Shafer, Kline & Warren, Inc.*, 26 Kan.App.2d 515, 518 (1999) ("Expert testimony is often required to establish the standard of care in cases involving professional actions and whether the professional deviated from the standard of care.") (citations omitted).

**IT IS FURTHER ORDERED** that Cross-Claim Defendants Wally's Natural Products, Inc.'s and United Natural Foods, Inc.'s Motion and Memorandum in Support of Their Motion for Summary Judgment (ECF No. 131) is granted in part and denied in part.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 14th day of March 2011.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties