IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANNE F. DANAHER,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        Case No. 08CV-2293 JAR/DJW
                                    )
WILD OATS MARKETS, INC.,            )
UNITED NATURAL FOODS, INC.,         )
WALLY'S NATURAL PRODUCTS, INC.,)
and KAREN S. KENNEY,                )
                                    )
        Defendants.                 )

## WILD OATS' MOTION FOR JUDGMENT
## AS A MATTER OF LAW PURSUANT TO RULE 50

COMES NOW the defendant/cross-claimant, Wild Oats Markets, Inc. ("Wild Oats"), by and through its attorneys of record, Law Offices of Joseph D. Ryan, P.C. and Manz Swanson & Mulhern, P.C. and moves this court to enter judgment as a matter of law in its favor as to the plaintiff's complaint.

Pursuant to Rule 50(a)(1) of the Federal Rules of Civil Procedure, during the course of a trial, the court may enter judgment as a matter of law in favor of a party who demonstrates that a reasonable jury would not have a legally sufficient evidentiary basis to find for a party on a particular issue, after a party has been fully heard on an issue and before the case is submitted to the jury. There is not a legally sufficient evidentiary basis for the jury to find in favor of the plaintiff.

## ARGUMENT

The plaintiff's products liability claim against Wild Oats is premised upon negligence, strict liability and breach of warranty. The plaintiff further asserts that she is

entitled to punitive damages. Wild Oats, for the reasons set forth below, is entitled to judgment as a matter of law in its favor and against the plaintiff.

**A.     The Plaintiff Cannot Establish That The Ear Candle Was Defective Or Unreasonably Dangerous And That Such Condition Existed At The Time That It Left The Possession Or Control Of Wild Oats.**

Although the plaintiff alleges that the ear candle that caused her injury was defective and unreasonably dangerous, several "hard and fast" rules of law must be followed in order for plaintiff to satisfy her burden of proof and establish liability. Regardless of whether she is claiming damages under negligence, strict liability, or breach of warranty, the plaintiff must prove that (1) the product was defective, (2) the product was defective at the time it left the defendant's possession or control, and (3) the plaintiff suffered damages as a result of such defect. *Lane v. Redman Mobile Homes, Inc.*, 5 Kan.App.2d 729, 733, 624 P.2d 984, rev. denied, 229 Kan. 670 (1981); *Miller v. Lee Apparel Company, Inc.*, 19 Kan.App.2d 1015 1031, 881 P.2d 576, 588 (1994) (All product liability actions); *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 657 P.2d 517 (1983); *Hodges v. Johnson*, 39 Kan.App.2d 220, 223, 178 P.3d 59, 62 (2008) (Breach of Warranty).

A party in the distributive chain of a product is not an insurer against injury and does not have to design, manufacture, or distribute products that are accident proof or incapable of producing an injury. *Garst v. General Motors Corp.*, 207 Kan. 2 484 P.2d 47 (1971). Therefore, the mere fact that a plaintiff has been injured by a product does not establish liability, nor can a plaintiff establish liability merely by showing that a different or alternative design would have alleviated or averted the plaintiff's injuries. *Id.*

Furthermore, to establish that a product is defective or unreasonably dangerous, the plaintiff must offer evidence of a *specific defect* in the product. *Jenkins v. Amchem Products, Inc., 256 Kan. 602, 886 P.2d 869, 890 (1994); Garst v. General Motors Corp., 207 Kan. 2, 484 P.2d 47 (1971).* A failure to identify a specific defect in a product precludes a finding of liability. *Id.; McCroy v. Coastal Mart, Inc., 207 F.Supp.2d 1265 (D. Kan. 2002)* (Court rejected plaintiff's assumption that a drink was excessively hot and therefore defective and unreasonably dangerous solely based upon the fact that the plaintiff was burned, because such an argument amounts to post hoc, ergo propter hoc rationale, and is contrary to Kansas law requiring proof of an identifiable and specific defect in a product).

The plaintiff was the only witness at trial who attempted to establish that the ear candle in plaintiff's accident was defective. No other witnesses testified regarding the defective, unreasonably dangerous or unsafe condition of the ear candle or ear candles in general. However, the plaintiff is not qualified as an expert in the field of ear candles or ear candling, and has not identified herself as such. Furthermore, even if she possessed the necessary qualifications to offer an opinion that the ear candle involved in her accident was defective, she does not have such an opinion. Quite to the contrary, the plaintiff testified that despite her injury and everything that she has learned since the date of the accident, she has not formed a belief that the ear candle was defective in any way.

Specifically, the plaintiff was not aware of any specific defect with regard to ear candles in general, and more importantly, the specific model or type of ear candles involved in her accident. Thus, she could not identify whether the alleged defect was a

design or manufacturing defect, and she did not have an opinion regarding any instructions or warnings or whether any instructions or warnings were either adequate or defective. In fact, the plaintiff could not prove that the ear candles she purchased from Wild Oats were unaccompanied by any instructions or warnings. Rather, she simply could not recall whether the candles she allegedly bought in 2003 had instructions or warnings on or near the container from which she attained them.

Proof that a product has a specific defect is an essential element of a product liability claim, and the plaintiff's failure to recall whether the ear candles were accompanied by instructions is insufficient to satisfy the plaintiff's burden on this essential element. A liability action cannot be made based on mere speculation, guess or conjecture, and the plaintiff can provide no substantially competent evidence required to support a verdict in her favor. *Mays v. Ciba-Geigy Corp.,* 661 P.2d 348, 233 Kan. 38 (1983); *Wooderson v. Ortho Pharmaceutical Corp.,* 681 P.2d 1038, 235 Kan. 387, 393 (1984). That is, she has produced no substantial evidence which is both relevant and substantive to support her argument that the ear candle was defective and did not contain any instructions or warnings. *Ibid.*

Without identifying a specific defect in the ear candle, the plaintiff is left with only trying to establish Wild Oats' liability based solely upon the fact that she sustained an injury through the use of the product. This means that Wild Oats would be the insurer of the plaintiff against any injury and would be held accountable for failing to make the ear candle accident-proof and incapable of causing an injury. However, the mere fact that the plaintiff had been injured by the ear candle does not establish liability. *Garst*, 207 Kan. 2.

4

**B.    No Duty To Instruct And/Or Warn.**

The duty to instruct or warn does not extend:

(A) To warnings, protecting against or instructing with regard to those safeguards, precautions, and actions which a reasonable user or consumer of the product, with the training, experience, educaton and with any special knowleddge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances;

(B) To situations where the safeguards, precautions, and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution, and procedure;

(C) To warnings, protecting against or instructing with regard to dangers, hazards or risks which are paten, open, or obvious and which should have been realized by a reasonable user or consumer of the product.

PIK 4th 128.05; Kerns v. G.A.C., Inc. 255 Kan. 264, 875 P.2d 949 (1994) (Dangers or hazards that are open and obvious and which should be realized by a reasonable user do not impose a duty to warn).

The alleged dangers, hazards, or risks associated with the candle, such as the positioning of the head and the burning of the candle, were paten, open, or obvious to a reasonable person.    Further, the plaintiff's testimony contains admissions and concessions regarding these items.

5

**C. Plaintiff's Claim for Failure to Warn Must Fail as a Matter of Law Because the Failure to Warn was not the Proximate Cause of Plaintiff's Injury**

Under Kansas law, in a products liability claim based on a defendant's failure to warn, the defendant's alleged failure to warn must be the proximate cause of plaintiff's injury. *Neff v. Coleco Industries, Inc.,* 760 F. Supp 864 (D.Kan. 1991). This general principal of law has been adopted widely by Courts in other jurisdictions. *See* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 971 (1989) (failure to warn was not proximate cause of accident); *Caraballo v. United States,* 830 F.2d 19 (2d Cir.1987) (failure to warn was not proximate cause of accident); *Colosimo v. May Dept. Store Co.,* 466 F.2d 1234 (3d Cir.1972) (error in judgment was proximate cause of plaintiff's injuries); *Winant v. Carefree Pools,* 709 F.Supp. 57 (E.D.N.Y.), *aff'd,* 891 F.2d 278 (2d Cir.1989) (no duty to warn of obvious risk); *Glittenberg v. Doughboy Recreational Industries, Inc.,* 436 Mich. 673, 462 N.W.2d 348 (1990) (no duty to warn of open and obvious dangers in simple product); *Spaulding v. Lesco International Corp.,* 182 Mich.App. 285, 451 N.W.2d 603 (1990).

Courts in Kansas define the proximate cause of an injury as follows: "The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." *Neff v. Coleco Industries, Inc.* at 868 *citing State Farm Mut. Auto Ins. Co. v. Cromwell,* 187 Kan. 573, Syl. ¶ 4, 358 P.2d 761 (1961).

In our case, defendant Wild Oats Markets, Inc.'s alleged failure to warn cannot be the proximate cause of plaintiff's injuries. Plaintiff allegedly purchased the ear candles from Wild Oats Markets, Inc in 2003. The candles then sat at plaintiff's home

for approximately three years and were finally used when plaintiff hired Karen Kenney to perform the ear candling procedure.  Most importantly, Karen Kenney testified that any instructions provided by Wally's Natural Products and included with packaging at Wild Oats Markets would not have changed the way Ms. Kenney performed the procedure. Simply stated, there is no proximate cause between defendant Wild Oats' alleged failure to warn and the injury sustained.

Karen Kenney's acts or omissions are the only proximate cause the jury could consider after the evidence and are certainly "intervening" to any failure to warn.  As a result, plaintiff's allegations of "failure to warn" against defendant Wild Oats Markets, Inc. must fail as a matter of law.

**D.**     **Plaintiff Fails To Satisfy The Elements For An Implied Warranty Claim.**

Plaintiff's breach of warranty claim is premised upon an alleged implied warranty of fitness for a particular purpose. (PreTrial Order – Doc. 128, Plaintiff's Theories and Elements of Recovery, § 6(a)3 and 6(d)).  In order for such a warranty to arise, the plaintiff must offer evidence that "the seller at the time of contracting [for the purchase of goods] has reason to know any particular purpose for which the goods are required and that the buyer is relying on seller's skill or judgment to select or furnish suitable goods" for the particular purpose.  K.S.A. 84-2-315.  The comments to this statutory provision specify that for this type of warranty, "a 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question."  K.S.A. 84-2-315.  An example

was incorporated into the comments section to illustrate the concept of fitness for a particular purpose and distinguish particular purpose from the ordinary use of a product. "[F]or example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains." *Id.*

In *Stover v. Eagle Products, Inc.*, 896 F.Supp. 1085 (D. Kan. 1995), dog kennel owners brought a product liability action against a dog food manufacturer, alleging that the manufacturer breached the implied warranty of fitness for a particular purpose with regard to a food product. Because the feeding of dogs is an ordinary use of its product, the defendant argued that the plaintiffs' claim for an implied warranty of fitness for a particular purpose must fail as a matter of law. The court, in agreeing with the defendant, held that an implied warranty of fitness for a particular purpose does not arise when goods are acquired for the ordinary purpose for which such goods are generally used. 896 F.Supp. at 1091; *See, Duffee v. Murray Ohio Mfg. Co.,* 866 F.Supp.1321, 1323 (D. Kan. 1994) (In dismissing a claim for an implied warranty of fitness for a particular purpose, the court held that a child riding and braking his bicycle are not unusual, but customary uses of a child's bicycle.)

The plaintiff cannot establish that the ear candle was purchased for a specific use which is different than the ordinary purpose for which ear candles are used. In fact, the plaintiff acknowledged at trial that prior to her purchase of the candle in 2003, she did not conduct any research on the use of ear candles, how to use them or for what purpose they might be used. Rather, she simply decided to buy the ear candles in 2003 because her friend, Anita Cornejo, thought it would be a good idea to have them in case

8

she needed them.    Because the plaintiff did not have any particular purpose in purchasing the ear candles in 2003, she cannot establish that she purchased them for a specific use, as opposed to the ordinary purpose for which such candles would be bought.

To the extent that plaintiff developed an intent to use the candles for a particular purpose, as opposed to the ordinary purpose for which ear candles are used, the particular purpose did not arise until June 2006, three years after the plaintiff had purchased the ear candles.  Thus, neither Wild Oats nor the plaintiff knew the plaintiff's particular purpose in purchasing the ear candles more than three years prior to its use.

In addition, for the implied warranty to exist, Wild Oats would have had to have known, at the time that the plaintiff was purchasing the ear candle, that the candle was being acquired for a particular purpose.   K.S.A. 84-2-315; *Limestone Farms, Inc. v. Deere & Co., 29 Kan.App.2d 609, 614, 29 P.3d 457, 461 (2001).*   The plaintiff admits that her only communications with Wild Oats addressed whether it sold ear candles and the location of the ear candles within its store.   Plaintiff's interaction with the Wild Oats employee who was present at the store when the plaintiff went to make her purchase was limited to the plaintiff asking whether Wild Oats sold ear candles and the Wild Oats employee pointing the plaintiff to the area of the store where the candles were located. The plaintiff did not ask the Wild Oats employee or anyone else at Wild Oats about the quality of the ear candles, the purpose for which they were used, how they were used or how they should not be used, and no one at Wild Oats volunteered or supplied this information.  Furthermore, the plaintiff did not advise Wild Oats why she was interested in purchasing or using ear candles or how she might use them.   She did not even say

whether they were intended for her personal use. Thus, a particular purpose for the ear candle, if one even existed, was never conveyed to any employee or agent of Wild Oats.

Furthermore, in order to establish the existence of the implied warranty, the plaintiff would have to show that she relied on Wild Oats' skill or judgment to select and furnish a suitable ear candle. *Id.* Once again, there is no evidence to satisfy this particular element of plaintiff's claim. Plaintiff's inquiry as to whether Wild Oats sold ear candles and where they were located within the store cannot be construed as the plaintiff relying upon Wild Oats' skill or judgment to select or furnish an ear candle for a particular purpose.

**E.    There Has Been No Breach Of A Standard Of Care.**

A claim of negligence requires, among other things, that the plaintiff establish a standard of care that the defendant allegedly breached. *Garst v. General Motors Corp., 207 Kan. 2, 484 P.2d 47 (1971).* The plaintiff has not produced any witnesses who rendered any opinion as to the standard of care for Wild Oats. Thus, no witnesses, including the plaintiff, testified that they had the education, experience, training or specialized knowledge as to what a retailer should or should not do with regard to the sale or distribution of ear candles, nor with regard to warnings or instructions accompanying ear candles. Plaintiff's failure to establish the standard of care by which to evaluate the conduct of Wild Oats precludes a finding that Wild Oats breached any standard of care and thereby entitles Wild Oats to a judgment as a matter of law in its favor and against the plaintiff on the plaintiff's negligence claim.

**F.     Plaintiff Is Not Entitled To Punitive Damages.**

In order to recover punitive damages, a plaintiff must prove by *clear and convincing* evidence, as opposed to the preponderance of evidence, that a defendant acted with willful conduct, wanton conduct, fraud, or malice. *Messer v. Amway Corp.,* 210 F.Supp.2d 1217 (D. Kan. 2002).   This requires the plaintiff to show that a defendant's actions were performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the wrongful act. *Id.* Thus, the mental attitude of the defendant and not a particular act of negligence is a crucial inquiry. *Wagner v. SFX Motor Sports, Inc.,* 460 F.Supp.2d 1263, 1271 (D. Kan. 2006); *Hollinger v. Jane C. Stormont Hospital and Training School for Nurses,* 2 Kan.App.2d 302, 578 P.2d 1121 (1978).

In *Hollinger,* the plaintiff sought punitive damages as a result of injuries she sustained when a hospital employee, as a prank, approached plaintiff from behind while she was selling newspapers in the hospital lobby and attempted to remove a newspaper from her bag.   The court held that, without prior notice for a propensity for "pranksterism" on the part of the hospital employee, the plaintiff could not establish any wanton or reckless disregard of plaintiff's rights, thereby warranting judgment in favor of the defendant on plaintiff's punitive damage claim.

Wild Oats did not have any knowledge of any alleged defective or unreasonably dangerous condition associated with ear candles prior to plaintiff's lawsuit.   More importantly, Wild Oats did not have any knowledge, prior to being made aware of plaintiff's accident, that there allegedly was a defective or unreasonably dangerous condition associated with the particular ear candle purchased by the plaintiff.

Even if Wild Oats had knowledge of the unspecified defect and had knowledge of a prior accident involving an ear candle, such evidence by itself would be insufficient to award punitive damages. *Messer v. Amway Corp., 210 F.Supp.2d 1217, affirmed, 106 Fed.Appx. 678 (2002)* (A manufacturer of a chemical floor stripper, as a matter of law, did not act willfully, wantonly, fraudulently, or maliciously to support an award of punitive damages when it continued to market a floor cleaning product with existing labels after it received notice of a single claim of a burn injury prior to the incident forming the instant action). The plaintiff cannot rely solely upon either of these two unproven facts in isolation. *Id.* The plaintiff has to place such evidence in the context of many other factors, including the mental state of the defendant, to ascertain whether punitive damages are justified. *Id.*

The plaintiff cannot show that Wild Oats had the requisite mental state to award punitive damages. There is insufficient evidence to establish any willful, wanton, fraudulent, or malicious act or omission on the part of Wild Oats to justify the imposition of punitive damages. What is even more pronounced is the fact that plaintiff cannot establish, by clear and convincing evidence, facts to support her claim for punitive damages. Therefore, Wild Oats is entitled to judgment as a matter of law on plaintiff's claim for punitive damages.

## JUDGMENT SOUGHT

Wild Oats hereby requests that the court enter judgment as a matter of law in its favor and against the plaintiff pursuant to Rule 50.

Respectfully,

*/s/ Joseph D. Ryan*

12

LAW OFFICES OF JOSEPH D. RYAN, P.C.
1896 Sheridan Road, Suite 240
Highland Park, Illinois  60035
Telephone:  (847) 432-5971
Facsimile:  (847) 432-5975
jryan@ryanlawoffices.com
**ATTORNEY FOR DEFENDANT**
**WILD OATS MARKETS, INC.**


*/s/ Benjamin Fadler*

---

Benjamin Fadler
SCHMITT MANZ SWANSON & MULHERN, P.C.
1000 Walnut Street, Suite 800
Kansas City, Missouri  64106
Telephone:   (816) 472-5310
Facsimile:   (816) 472-5320
bfadler@schmittmanzlaw.com
**ATTORNEY FOR DEFENDANT**
**WILD OATS MARKETS, INC.**

13

## Certificate of Service

I hereby certify that on July 12, 2011, a true and correct copy of the above and foregoing was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system, including the following:

John G. O'Connor
ROBB TAYLOR & O'CONNOR
827 Armstrong Avenue
Kansas City, Kansas 66101
Telephone:   (913) 321-9600
Facsimile:   (913) 321-0199
jack_oconnor2000@yahoo.com
**ATTORNEY FOR PLAINTIFF**

Jeffrey Siegel
FRISCHER & ASSOCIATES, CHTD.
13220 Metcalf, Suite 100
Overland Park, Kansas 66213
Telephone:   (913) 345-0100
Facsimile:   (913) 345-1802
wthomas@frislaw.com
**ATTORNEY FOR DEFENDANT KAREN S. KENNEY**

Derrick A. Pearce
WALLACE, SAUNDERS, AUSTIN, BROWN AND ENOCHS, CHTD.
10111 West 87th Street
P.O. Box 12290
Overland Park, KS 66282-2290
Telephone:   (913) 888-1000
Facsimile:   (913) 888-1065
dpearce@wallacesaunders.com
**ATTORNEY FOR DEFENDANTS
WALLY'S NATURAL PRODUCTS, INC.
AND UNITED NATURAL FOODS, INC.**

/s/ Benjamin Fadler

Benjamin Fadler
For the Firm

14